**Jane NIEHAUS and Joyce Neumann, Appellants,**

v.

**KANSAS BAR ASSOCIATION, John Gardner, and Marcia Poell, Appellees.**

Nos. 85–1304, 85–1305.

United States Court of Appeals, Tenth Circuit.

June 13, 1986.

Margie J. Phelps, Topeka, Kansas, for appellants.

Mary Kathleen Babcock, Mikel L. Stout, Amy S. Lemley, and Foulston, Siefkin, Powers & Eberhardt, Wichita, Kansas, for appellees.

Before HOLLOWAY, Chief Judge, and BALDOCK, TIMBERS,* Circuit Judges.

* Of the Second Circuit, by designation.

TIMBERS, Circuit Judge.

Appellants Joyce Neumann and Jane Niehaus appeal from a judgment entered January 24, 1985 in the District of Kansas, Dale E. Saffels, *District Judge*, granting appellees summary judgment on appellants' Rehabilitation Act claim, their §§ 1983, 1988, First and Fourteenth Amendment claims, and various pendent state law claims. Appellants also appeal from an order entered January 14, 1985 by G. Thomas Van Bebber, *United States Magistrate*, denying appellants' motion to compel additional discovery.

The district court granted summary judgment on appellants' Rehabilitation Act claim because it found that the Kansas Bar Association ("KBA") was not a federal grant recipient. As to appellants' §§ 1983, 1988, First and Fourteenth Amendment claims, the court granted summary judgment because it found that appellants' terminations were not the result of state action. The magistrate denied appellants' motion to compel additional discovery because he found that many of appellants' requests were overly broad and pertained to a time period irrelevant to the action.

On appeal, appellants argue that the district court erred in finding no federal financial assistance and no state action; and that the magistrate's denial of their motion to compel discovery was clearly erroneous.

For the reasons stated below, we affirm the district court's order granting summary judgment and the magistrate's order denying discovery.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal. The facts are straightforward and uncontroverted.

Appellant Joyce Neumann was employed by the KBA as a secretary-receptionist from September 1978 through November 1982. Neumann's right hand is slightly handicapped as a result of a fall from a bicycle as a child. On November 24, 1982, appellee Marcia Poell, the KBA's Executive Director, terminated Neumann's employment allegedly because her typing skills were unsatisfactory, her filing skills were poor, and her phone manner was discourteous.

Appellant Jane Niehaus was employed by the KBA as a bookkeeper from May 1975 until December 1982. Niehaus is not handicapped.[1] Appellee Poell terminated Niehaus' employment on December 15, 1982.

As a result of their terminations, appellants commenced the instant employment discrimination action in January 1984.[2] Appellants commenced their action pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (1982); 42 U.S.C. §§ 1983, 1988 (1982); and the First and Fourteenth Amendments of the United States Constitution. In addition, appellants asserted various pendent state law claims for assault and battery and abusive discharge which are not before us on this appeal.

Appellant Neumann claimed that she had been terminated solely because of her handicap. Appellant Niehaus claimed that she had been terminated in retaliation for her association and assistance to appellant Neumann.

Thereafter, in February 1984, appellees filed a dispositive motion to dismiss and/or for summary judgment with respect to all of appellants' claims. Appellants filed a

---

**1.** Appellees argued before the district court that Niehaus lacked standing to sue under the Rehabilitation Act since she is not handicapped. The district court did not reach the issue because it found that appellants had failed to establish that the KBA had received federal financial assistance during Neumann's employment. Since we hold that the district court correctly resolved the issue of federal funding, it is neither necessary nor appropriate for us to reach the issue of whether Niehaus had standing to sue under the Rehabilitation Act.

**2.** Appellant Neumann commenced her employment discrimination action on January 9, 1984; appellant Niehaus commenced hers on January 10, 1984. Initially, the cases were assigned to different federal judges. On May 18, 1984, however, the cases were consolidated.

preliminary response and a motion for additional time to obtain discovery regarding the issues raised in appellees' dispositive motion. The court granted the request. In March 1984 appellants requested the production of numerous documents covering a specific time period—January 1, 1978 to the date of the request. Appellees produced the requested documents.

Subsequently, in July 1984, appellants served a notice requesting additional discovery items—largely documents prior to 1978. Appellees opposed the request. After hearing oral argument, Magistrate Van Bebber denied the request in an order dated January 14, 1985. The magistrate found that many of the requests were overly broad and that documents prior to 1978 were irrelevant to the action. Appellants did not appeal to the district court from the magistrate's order.

On January 24, 1985, Judge Saffels granted appellees summary judgment on all of appellants' claims. This appeal followed.

## II.

The Rehabilitation Act of 1973 prohibits discrimination against the handicapped by federal grant recipients. One of the objectives of the Act, as stated by Congress, was to " 'promote and expand employment opportunities in the public and private sectors for handicapped individuals and to place such individuals in employment.' " *Consolidated Rail Corp. v. Darrone,* 456 U.S. 624, 626 (1984) (quoting 29 U.S.C. § 701(8)). To further that objective, Congress enacted § 504, which provides a handicapped person with a private right of action against a recipient of federal funds whose program discriminates against the handicapped. Section 504 provides:

"No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination *under any program or activity receiving Federal financial as-*

*sistance or under any program or activity conducted by any Executive agency or by the United States Postal Service....*"

29 U.S.C. § 794 (emphasis added).

In *Consolidated Rail Corp. v. Darrone, supra,* 456 U.S. at 624, the Supreme Court clarified the scope of a private right of action for employment discrimination under § 504. Prior to *Darrone,* several courts of appeals had held that a party had standing to sue under § 504 only "where a primary objective of the Federal financial assistance was to provide employment." *Id.* at 629. The *Darrone* Court rejected the "primary objective" restriction, stating that "[s]ection 504, by its terms, prohibits discrimination only by a 'program or activity receiving Federal financial assistance.' " *Id.* at 635. Thus, the Court made clear that the only limitation contained in § 504 is that the discrimination occur under a "specific program that receives federal funds." *Id.* at 636.

This restriction is commonly referred to as program specificity. It was recognized by several courts of appeals even prior to the Supreme Court's decision in *Darrone* as a threshold requirement for asserting a Rehabilitation Act claim. *E.g., Jacobson v. Delta Airlines, Inc.,* 742 F.2d 1202, 1208 (9th Cir.1984); *Doyle v. University of Alabama,* 680 F.2d 1323, 1326 (11th Cir.1982); *Brown v. Sibley,* 650 F.2d 760, 769 (5th Cir.1981).

In explaining the requirement of program specificity, the Fifth Circuit has stated:

"[I]t is not sufficient, for purposes of bringing a discrimination claim under section 504, simply to show that some aspect of the relevant overall entity or enterprise receives or has received some form of input from the federal fisc. *A private plaintiff in a section 504 case must show that the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefited by federal financial assistance.*"

*Brown, supra,* 650 F.2d at 769 (emphasis added).

In order to satisfy the requirement of program specificity in the instant case, appellants had to establish that their employer, the KBA, directly received or benefited from federal financial assistance during the period of appellant Neumann's employment—September 1978 through November 1982. Since Neumann is the only handicapped employee involved in this action, the KBA could not have shown any handicap animus prior to Neumann's employment.

Appellants concede that the KBA has not received directly any federal financial assistance since 1977. They nevertheless argue that the requirement of program specificity has been satisfied because two other bar related associations—K–Bar Research, Inc. ("K–Bar") and Prepaid Legal Services of Kansas—received federal funding during the period of Neumann's employment. Appellants argue that the receipt of federal funds by these two entities constituted receipt by the KBA. The district court correctly rejected appellants' argument.

■ The affidavits and pleadings of the parties establish that K–Bar was a not-for-profit corporation organized in 1975 to make computerized legal research available to the lawyers, courts and state agencies of the State of Kansas. Toward that end, in 1977, K–Bar received a six-month federal grant. The grant ran from August 1, 1977 to January 30, 1978. It is uncontroverted that this was the last federal grant money that K–Bar received before it was dissolved in 1981. Since the grant expired some eight months before Neumann was hired, neither K–Bar nor the KBA benefited from the receipt of federal financial assistance during Neumann's employment.

The only possible link between K–Bar's receipt of federal funds and the KBA during Neumann's employment was the fact that K–Bar paid back part of a loan it had received from the KBA allegedly with federal grant money. The district court correctly recognized that "the use of federal funds for repayment of a loan by K–Bar Research, Inc. to the KBA cannot be classified as receipt of federal funds by the KBA."

■ With respect to Prepaid Legal Services of Kansas, appellants' claim likewise is untenable. The affidavits establish that Prepaid Legal Services was a not-for-profit corporation organized to provide prepaid legal services to Kansas consumers. A group known as Alliance Administrators supervised the operations of Prepaid Legal Services. Prepaid Legal Services received its last federal funding in 1979. The corporation was dissolved in 1980.

The only mention of Prepaid Legal Services in appellants' affidavits is a reference in Niehaus' affidavit to the effect that Neumann had typed minutes for the Executive Council of the KBA, which minutes included matters involving Prepaid Legal Services. In addition, Niehaus claimed that she did the bookkeeping for Prepaid Legal Services. These assertions are not enough to establish that Prepaid Legal Services was an alter ego of the KBA, or that the KBA benefited directly from Prepaid Legal Services' receipt of federal funds.

Accordingly, since appellants failed to establish that they were excluded from a program that directly received or benefited from federal financial assistance during handicapped Neumann's employment, we hold that the district court properly granted appellees' motion for summary judgment on the Rehabilitation Act claim.

### III.

Next, we turn to appellants' §§ 1983, 1988, First and Fourteenth Amendment claims. It is axiomatic that, in order to maintain a civil rights action, the "conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the state." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982). The Supreme Court has articulated a two-part test for determining whether conduct can be fairly attributed to the state.

"First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of

conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."

*Lugar, supra,* 457 U.S. at 937.

■ Appellants claim that their terminations are attributable to the state because the KBA has a close relationship with the Kansas Supreme Court—a part of the judicial branch of the state government. To support their claim of state action, appellants rely on the following factors: (1) the Kansas Supreme Court used the KBA facilities and personnel; (2) the Kansas Supreme Court once engaged the services of the KBA to prepare an amicus brief; (3) a member of the Kansas Supreme Court served on the KBA's Executive Council from 1974 to 1980; and (4) the Kansas Supreme Court provided office space to K–Bar. Based on these factors, appellants argue that the KBA was a *de facto* state agency with the individually named appellees being *de facto* government officials. The district court properly held that appellants' claim is without merit.

We have stated that, in determining whether there is state action, the exercise of governmental power must be distinguished from "benign or tangential governmental involvement". *Gilmore v. Salt Lake Community Action,* 710 F.2d 633, 636 (10th Cir.1983). We have stated further that, for state action to be found, " 'the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon the plaintiff *but with the activity that caused the injury.*' " *Ward v. Anthony Hospital,* 476 F.2d 671, 675 (10th Cir.1973) (quoting *Powe v. Mills,* 407 F.2d 73, 81 (2d Cir.1968)) (emphasis added).

None of the factors relied upon by appellants establishes that the Kansas Supreme Court was involved in appellants' terminations. Rather, the evidence indicates that any involvement by the Kansas Supreme Court in the KBA's activities was tangential at best, and was unrelated to appellants' terminations.

In the absence of any evidence indicating that the Kansas Supreme Court was involved in appellants' terminations, we hold that the district court properly granted appellees' motion for summary judgment on appellants' §§ 1983, 1988, First and Fourteenth Amendment claims.

IV.

■ It is uncontroverted that, prior to the district court's entry of summary judgment, appellants did not appeal from Magistrate Van Bebber's January 14, 1985 order which denied appellants' motion to compel additional discovery. Appellees argue that, by failing to file objections to the magistrate's report with the district court, appellants waived their right to appeal from the magistrate's order. We agree.

Section 636(b)(1)(A) of the Federal Magistrate's Act, 28 U.S.C. § 631 *et seq.* (1982), provides that a judge may request that a magistrate hear pre-trial matters pending before the judge, including discovery motions. Fed.R.Civ.P. 72(a) provides that "the district judge to whom the case is assigned shall consider objections [to the magistrate's order] made by the parties, provided they are served and filed within 10 days after entry of the order, and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Similarly, Local Rules of Practice of the United States District Court for the District of Kansas provide that "[a]ny party may appeal from a magistrate's order determining a motion or matter under subsection 1(c) of these rules, *supra,* within ten days after issuance of the magistrate's order, unless a different time is prescribed by the magistrate or judge." Rules of Practice, Dt. of Kans.R. IV. (1982).

In examining the right to appeal from a magistrate's order, federal courts of ap-

peals have held that appeals from magistrates' rulings must be to the district courts and that appellate courts are without power to hear appeals directly from orders of federal magistrates. *E.g., United States v. Walter,* 638 F.2d 947, 949 (6th Cir.1981); *United States v. Renfro,* 620 F.2d 497, 500 (5th Cir.1980); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 & n. 1 (1st Cir.1980); *Sick v. City of Buffalo,* 574 F.2d 689,. 693 (2d Cir.1978); *United States v. Reed,* 552 F.2d 170 (7th Cir.1977) (per curiam).

In interpreting the "may" language in a local rule virtually identical to Kansas' local rule referred to above, the First Circuit held that:

> "a party 'may' file objections within ten days or he may not, as he chooses, but he 'shall' do so, if he wishes further consideration.
>
> ... We are opposed to the taking of appeals by one who has never stated his position to the district court."

*Park Motor Mart, supra,* 616 F.2d at 605. We agree with the First Circuit.

By failing to file timely objections to the magistrate's discovery order, appellants not only stripped the district court of its function of effectively reviewing the magistrate's order, but also frustrated the policy behind the Magistrate's Act, i.e., to relieve courts of unnecessary work and to improve access to the courts. Accordingly, we hold that, since appellants failed to object in the district court to the magistrate's order, we are without power to review that order on appeal.

### VI.

We deny appellees' request for attorney's fees and costs pursuant to 28 U.S.C. § 1912 and Fed.R.App.P. 38. Although we hold that the district court properly granted appellees summary judgment on all of appellants' claims, we decline to hold that appellants' claims are frivolous or baseless. In fairness to all concerned, we are constrained to state that this holding is a very close one.

### VII.

To summarize:

We hold that, since appellants failed to establish that they were excluded from a program which received or directly benefited from federal financial assistance, the district court properly granted summary judgment to appellees on appellants' Rehabilitation Act claim. We also hold that, since appellants failed to establish that their terminations were the result of state action, the district court properly granted summary judgment to appellees on appellants' §§ 1983, 1988, First and Fourteenth Amendment claims. We further hold that, by failing to object to the magistrate's order in the district court, appellants waived their right to appeal from that order. Finally, we deny appellees' request for costs and attorney's fees.

AFFIRMED.