## UNITED STEELWORKERS OF AMERICA, AFL–CIO, Appellant,

v.

## NEW JERSEY ZINC COMPANY, INC. licensed to do business in the State of New Jersey and as Administrator of the Pension Plan of the New Jersey Zinc Company.

No. 86–5756.

United States Court of Appeals, Third Circuit.

Argued May 21, 1987.

Decided Sept. 14, 1987.

As Amended Oct. 6, 1987.

---

Jeremiah A. Collins (argued), Elliot Bredhoff, Julia Penny Clark, Cynthia L. Estlund, Bredhoff & Kaiser, Washington, D.C., Arnold S. Cohen, Oxfeld, Cohen and Blunda, Newark, N.J., for appellant.

Ronald L. Coleman (argued), Squire, Sanders & Dempsey, Cleveland, Ohio, Vincent M. Maggitti, Archer & Greiner, Haddonfield, N.J., for appellee N.J. Zinc Co., Inc.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

#### Introduction

The United Steelworkers of America (Steelworkers) filed this action seeking to force the New Jersey Zinc Company (NJ Zinc), to fully fund pension benefits as its predecessor had negotiated to do. Following a bench trial the district court entered judgment against Steelworkers, finding that NJ Zinc had never agreed to be bound by the full funding contract provision relied on by Steelworkers.

Two issues are presented by Steelworkers' appeal. First, has Steelworkers waived its right to contest a magistrate's ruling that it was not entitled to a jury trial because it failed to object to that ruling in the district court? Second, is the district court's finding that NJ Zinc never agreed to be bound by the full funding contract provision clearly erroneous?

### II.

#### Facts

Prior to September 30, 1981, Gulf & Western Industries, Inc. (G & W), through one of its divisions, operated three facilities located in Palmerton, Pa., Depue, Ill., and Ogdensburg, N.J., (the three facilities) and seven facilities elsewhere. Steelworkers was the collective bargaining representative of workers at the three facilities and in that capacity had, along with four Locals, negotiated and signed a Basic Labor Agreement (the Labor Agreement) with G & W covering each of four bargaining units at the three facilities.

The Labor Agreement contained the following clause identifying other benefit agreements:

#### OTHER BENEFIT AGREEMENTS

The agreements of the parties with respect to Pensions, Insurance Program, Cost of Living Provisions, Supplemental Unemployment Benefits and Severance Pay are contained in separate agreements.

App. at 238. The Pension Agreement (the G & W Plan) applicable to the four units covered by the Labor Agreement was entered into by Steelworkers with G & W on

behalf of eleven bargaining units at all ten G & W facilities. The G & W Plan applied to active employees, retirees, and former employees with vested benefits.

Two clauses of the G & W Plan are relevant. One, a termination clause, provided that the G & W Plan could "be terminated at any time by the Board of Directors." App. at 189. The other, a funding clause, required:

> Upon termination of the Plan or upon termination of all of the Employer's operations, the *Employer will fully fund on a sound actuarial basis all vested benefits* currently payable or payable in the future under the eligibility provisions of the Plan in effect at the time of termination.
>
> ... The Employer reserves the right, subject to the Collective Bargaining Agreement, to reduce, suspend or discontinue its contributions under the Plan for any reason at any time.

App. at 179 (emphasis added). For the purposes of this clause, the term "Employer" was defined to include G & W and "any legal successor thereof." App. at 178.

In September 1981, G & W sold to NJ Zinc the three facilities covered by the Labor Agreement along with other assets. The sale was made pursuant to an Asset Purchase Agreement which provided, with respect to pension benefits, that NJ Zinc would assume responsibility for benefits to active employees of the three facilities while G & W would retain responsibility for benefits to prior employees. App. at 335. NJ Zinc agreed to "establish a qualified pension plan for those employees of [G & W] who are represented by [Steelworkers], which plan ... shall be substantially similar to [the G & W Plan]." App. at 333. G & W agreed to transfer a proportionate amount of the assets from the trust for the G & W Plan to NJ Zinc for use in setting up a trust for any new plan. App. at 335–36.

At the time that G & W and NJ Zinc were negotiating the asset sale, the collective bargaining agreement with Steelworkers was close to expiration. NJ Zinc, which had entered into a letter of intent covering the impending sale, observed at least one day of the 1981 negotiations, which culminated in certain changes memorialized in a Memorandum of Understanding (Memorandum) to be incorporated into the Labor Agreement between G & W and Steelworkers. That Memorandum provided, *inter alia,* for some increases in benefit levels to the separate G & W Plan, but made no reference to changes in the funding or termination clauses of that Plan. App. at 197–98.

Following its purchase of the three facilities from G & W, NJ Zinc continued operations of those facilities without significant changes. By letter dated October 1, 1981, NJ Zinc informed employees that it expressly assumed the amended Labor Agreement previously agreed to by G & W and Steelworkers:

> As an employee of [NJ Zinc], you will maintain your seniority and continue to be provided with your present insurance and benefit coverages. The new Company will succeed to the provisions of the recently negotiated three-year Labor Agreement with [Steelworkers] which will remain in effect.

App. at 264.

Effective October 1, 1981, NJ Zinc implemented a new pension plan (the NJ Zinc Plan) for active employees at the three facilities. The NJ Zinc Plan was "substantially similar" to the G & W Plan in that it maintained benefit levels for active employees at approximately the same level as recently negotiated. The NJ Zinc Plan contained a termination clause identical to that of the G & W Plan in that the NJ Zinc Plan could also "be terminated at any time by the Board of Directors." App. at 313. The NJ Zinc Plan did not retain the "full funding" provision of the G & W Plan. There was testimony at trial that Steelworkers was not informed of the adoption of the NJ Zinc Plan until its termination, approximately one year later.

In October 1982, NJ Zinc informed Steelworkers that it was terminating the NJ Zinc Plan for economic reasons. NJ Zinc filed with the Pension Benefit Guaranty Corporation (PBGC) a notice of intent to

terminate. PBGC agreed to termination of the NJ Zinc Plan and assumed responsibility for its subsequent administration. Steelworkers sought to prevent termination by filing unfair labor charges with the National Labor Relations Board, but the Regional Director, in a decision affirmed by the General Counsel, ruled that NJ Zinc had the right to terminate the NJ Zinc Plan unilaterally and declined to file a complaint.

The NJ Zinc Plan was terminated effective January 1, 1983. At that time, fund assets were insufficient to fully fund the actuarial present value of vested benefits owing under the NJ Zinc Plan. PBGC will guarantee some of the shortfall, and, under the Employee Retirement Income Security Act (ERISA), NJ Zinc is liable to PBGC for some or all of the amount paid to fund the NJ Zinc Plan by PBGC. PBGC will not, however, fully fund on an actuarial basis all of the vested benefits owing under the NJ Zinc Plan. The actuarial present value of vested benefits not guaranteed by PBGC is, by NJ Zinc's own estimation, approximately $600,000. Appellee's Brief at 18.

Steelworkers filed a complaint in the district court against NJ Zinc alleging, in Count I, a breach of the terms of the NJ Zinc Plan and a breach of NJ Zinc's fiduciary duty to fairly administer the Plan imposed by sections 404(a) and 409(a) of ERISA, 29 U.S.C. §§ 1104(a), 1109(a).[1] Steelworkers premised federal jurisdiction on both section 502 of ERISA, 29 U.S.C. § 1132, and section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Steelworkers sought various forms of relief including: 1) an order requiring NJ Zinc to fully fund vested benefits owing at the termination of the NJ Zinc Plan; 2) an order requiring NJ Zinc to rescind termination of the NJ Zinc Plan; 3) an order requiring NJ Zinc to continue funding of the NJ Zinc Plan; 4) an order replacing NJ Zinc's pension committee as trustee of the NJ Zinc Plan with directions to the new trustee to fund that Plan; and 5) an award of compensation to NJ Zinc

Plan participants for damages suffered on account of the breach of the terms of that Plan. Steelworkers demanded a jury trial on all issues.

NJ Zinc moved to strike the jury demand, and the motion was referred to a magistrate. The magistrate characterized the relief sought as equitable in nature and entered an order granting the motion. App. at 359–60. The district court then conducted a bench trial at the conclusion of which it found that Steelworkers had failed to prove its claims and entered judgment for NJ Zinc.

### III.

*The Jury Trial Demand: Waiver of Appellate Review*

Steelworkers contends that the proceedings below were fatally defective because it was not afforded the jury trial it demanded in its complaint. The jury demand was struck by the magistrate following his analysis of the relief requested on the claim that NJ Zinc breached a contractual obligation to fully fund all vested benefits. He determined that the overwhelming basis of the action was a claim for equitable relief, and reasoned that if the court were to grant the equitable relief sought, which was to compel NJ Zinc to fund the NJ Zinc Plan on a sound actuarial basis, it would render superfluous the only legal relief sought, which was damages to compensate the Plan's participants for whatever losses they may have sustained through NJ Zinc's non-funding. Turning to the ERISA claim, the magistrate recognized that "in the appropriate case of seeking enforcement of a damages remedy previously recognized in the courts of law, a jury trial is available under ERISA," App. at 353, but found that all of the relief sought on the ERISA claim was equitable.

▇ We do not reach Steelworkers' contention that the magistrate erred because we conclude that Steelworkers failed to

---

1. Count II of the complaint alleges that NJ Zinc violated ERISA by prematurely ceasing to pay benefits "according to the terms of the Plan" and beginning to pay "pursuant to its termi-

nation provisions." App. at 7. NJ Zinc contends that Count II was not pursued at trial. Steelworkers does not dispute this and has not pursued Count II on appeal.

preserve that issue in that it filed no objections to the magistrate's ruling and never raised the issue before the district court either before or during the course of the bench trial.

In determining whether Steelworkers was required to object to the magistrate's order in order to preserve its claim to a jury trial, we must distinguish between the two categories of matters that can be referred to a magistrate by the district court under the Federal Magistrates Act, 28 U.S.C. § 636(b)(1). Under subparagraph (A) of that section, the district court may designate a magistrate "to hear and determine any pretrial matter pending before the court" except for specified motions. 28 U.S.C. § 636(b)(1)(A).[2] Under subparagraph (B), the district court may designate a magistrate "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of those motions that are excepted in subparagraph (A). 28 U.S.C. § 636(b)(1)(B).[3]

The statutory language makes clear the differing roles of the magistrate with respect to the different categories of reference. In the case of subparagraph (A) references, the magistrate's order is dispositive unless the district court takes some action to overrule it. See H.R.Rep. No. 1609, 94th Cong., 2d Sess. 10, reprinted in 1976 U.S.Code Cong. & Admin.News

6162, 6170. Thus, subsection (A) provides: "A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). In contrast, a magistrate to whom a motion has been referred under subparagraph (B) acts merely as a recommender. Only the district court's entry of an order can put the proposed recommendations into effect. See H.R.Rep. No. 1609, 94th Cong., 2d Sess. 11, reprinted in 1976 U.S.Code Cong. & Admin.News 6162, 6171.[4] The statute provides that with respect to category (B) references, a party may file written objections within 10 days thereafter, and the district court judge must then make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (emphasis added).

When considering whether a party who has failed to object to a magistrate's ruling has waived its objections, the opinions of this court distinguish between the two categories of matters referred to magistrates. In Henderson v. Carlson, 812 F.2d 874, 877–78 (3d Cir.1987), we considered an appeal from the order of the district court denying a petition for a writ of habeas corpus which had been entered on the rec-

---

2. The section provides:

Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A).

3. The applicable sections provide:

Notwithstanding any provision of law to the contrary—

... (B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

28 U.S.C. § 636(b)(1)(B), (C).

4. In an analogous situation in Social Security litigation, we have distinguished between an ALJ's "initial decision," which has effect absent Appeals Council review, and an ALJ's "recommended decision," which must be acted on by the Appeals Council. See Littlefield v. Heckler, 824 F.2d 242, 245–46 (3d Cir. 1987).

ommendation of a magistrate to which no objections had been taken. We noted that the statute imposes on the district court an obligation to either accept or reject the magistrate's report when there has been a subparagraph (B) reference. We stated that even "in the absence of objections ... the better practice is for the district judge to afford some level of review to *dispositive* legal issues raised by the report." *Id.* at 878 (emphasis added).[5] Although we recognized that the majority of circuits hold otherwise,[6] we ruled that a party who failed to object to a magistrate's report on an issue referred under subsection (B) has not waived its right to object in this court to the legal conclusions contained therein.[7]

We have treated nondispositive matters referred to a magistrate under subparagraph (A) differently, and have expressly stated that a party's failure to object to a magistrate's ruling waives the party's objection. In *Siers v. Morrash,* 700 F.2d 113, 114–15 (3d Cir.1983), we held that a magistrate's ruling denying appointment of counsel pursuant to a subparagraph (A) reference was not final for purposes of appeal under 28 U.S.C. § 1291. Although we were ruling only on the question of appealability, the language of our opinion unmistakably suggests that a party objecting to a magistrate's ruling on a subparagraph (A) referral must object in the district court

in order to preserve the issue. We stated, "[c]learly, Congress intended that review of a magistrate's decision on a nondispositive pretrial matter *must, initially, be had in the district court.*" *Id.* at 116 (emphasis added). We then explained, "[d]istrict court review of a magistrate's determination of a nondispositive pretrial matter is not a meaningless exercise." *Id.* at 116 n. 9. Finally, we expressly set forth what we believed to be the applicable law. Since we were dealing with a pro se litigant, we suggested that it would be the "better practice" for district courts to inform the pro se litigant of the requirement that "if he wishes to appeal a pretrial decision, he must seek review by the district court by filing an application within 10 days of the date of the magistrate's order with the Clerk of the district court and that *failure to do so will waive the right to appeal.*" *Id.* at 116 (emphasis added).

The ten day requirement referred to in *Siers* for filing objections to a magistrate's order in a subparagraph (A) reference is not provided by the Federal Magistrates Act, which does contain such a requirement for subparagraph (B) matters. *See* 28 U.S.C. § 636(b)(1). However, the legislative history indicates that procedures are to be established by local rules. H.R.Rep. No. 1609, 94th Cong., 2d Sess. 10, *reprint-*

---

5. In *Thomas v. Arn,* 474 U.S. 140, 152, 106 S.Ct. 466, 473, 88 L.Ed.2d 435 (1985), the Supreme Court stated that there is nothing in either the language or legislative history of section 636(b)(1)(C) to demonstrate a Congressional intent "to require a district judge to review a magistrate's report [under section 636(b)(1)(B)] to which no objections are filed." Nothing in that opinion undermines our assumption in *Henderson* that such a review does take place before the district court enters its order adopting the report and that it is the "better practice" for judges to conduct such a review.

6. For cases holding that a party who fails to file objections to a magistrate's report waives its ability to pursue those objections on appeal see *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984); *McCarthy v. Manson,* 714 F.2d 234 (2d Cir.1983); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981); *United States v. Lewis,* 621 F.2d 1382 (5th Cir. 1980), *cert. denied,* 450 U.S. 935, 101 S.Ct. 1400, 67 L.Ed.2d 370 (1981); *Park Motor Mark, Inc. v.*

*Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980). *Contra Foss v. Federal Intermediate Credit Bank of St. Paul,* 808 F.2d 657 (8th Cir.1986); *Britt v. Simi Valley Unified School District,* 708 F.2d 452 (9th Cir.1983). In *Thomas,* the Supreme Court held that each court of appeals may promulgate its own rule. 474 U.S. at 155, 106 S.Ct. at 475.

7. We treated the effect of the failure of a party to object to a magistrate's legal conclusions as resulting "in the loss of the right to *de novo* review in the district court." *See Henderson,* 812 F.2d at 878–89. In our earlier opinion in *Grandison v. Moore,* 786 F.2d 146, 148 (3d Cir. 1986), we had held that the ten day statutory period for filing objections to a magistrate's report under 28 U.S.C. § 636(b)(1)(C) must be "strictly observed" but that the "failure to object within ten days is not a jurisdictional defect." Accordingly, we stated in *Henderson* that failure to object "does not necessarily preclude further consideration in the district court." 812 F.2d at 878 n. 2.

ed in 1976 U.S.Code Cong. & Admin.News 6162, 6170. The gap was filled by the promulgation in 1983 of Rule 72 of the Federal Rules of Civil Procedure which provides that in court-ordered referrals of non-dispositive matters under 28 U.S.C. § 636(b)(1)(A), the district court "shall consider objections [to the magistrate's order] made by the parties, provided they are served and filed within 10 days after the entry of the order, and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). Rule 40(D)(4)(a) of the Local Rules of the District of New Jersey provides a similar time-table.[8] Steelworkers was thus under ample notice by the applicable rules that it was required to file objections within ten days of the magistrate's order striking its jury demand, and by our opinion in *Siers* that failure to file such objections waived appellate review.

Both the Fifth and Tenth Circuits have held that parties who fail to object to a magistrate's order entered under section 636(b)(1)(A) have waived their right to appellate review of that order. *See Niehaus v. Kansas Bar Association*, 793 F.2d 1159, 1164–65 (10th Cir 1986); *Merritt v. International Brotherhood of Boilermakers*, 649 F.2d 1013, 1019 (5th Cir.1981); *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir.), *cert. denied*, 449 U.S. 921, 101 S.Ct. 321, 66 L.Ed.2d 149 (1980). As the court stated in *Niehaus*, "[b]y failing to file timely objections to the magistrate's discovery order, appellants not only stripped the district court of its function of effectively reviewing the magistrate's order, but also frustrated the policy behind the Magistrate's Act, i.e., to relieve courts of unnecessary work and to improve access to the courts." 793 F.2d at 1165.

Similar reasoning led the Supreme Court to uphold the Sixth Circuit's authority to require the filing of objections as a prerequisite to appellate review of a Magistrate's report under subparagraph (B). The Court stated:

> The Sixth Circuit's rule, by precluding appellate review of any issue not contained in objections, prevents a litigant from "sandbagging" the district judge by failing to object and then appealing. Absent such a rule, any issue before the magistrate would be a proper subject for appellate review. This would either force the court of appeals to consider claims that were never reviewed by the district court, or force the district court to review every issue in every case, no matter how thorough the magistrate's analysis and even if both parties were satisfied with the magistrate's report. Either result would be an inefficient use of judicial resources. In short, "[t]he same rationale that prevents a party from raising an issue before a circuit court of appeals that was not raised before the district court applies here." *United States v. Schronce*, 727 F.2d 91, 94 (CA4) (footnote omitted), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

*Thomas v. Arn*, 474 U.S. 140, 147, 106 S.Ct. 466, 471, 88 L.Ed.2d 435 (1985).

Although we recognize that the Ninth Circuit has adopted the contrary position in *U.S. Dominator v. Factory Ship Robert E. Resoff*, 768 F.2d 1099 (9th Cir.1985), on which Steelworkers relies, we find the reasons in favor of a waiver rule for subparagraph (A) orders more persuasive. Thus, even if our decision in *Siers* is not considered to be a precedential holding on this issue, as Steelworkers argues, we adopt the rule that parties who wish to preserve their objections to a magistrate's order en-

---

**8.** At the time of the magistrate's ruling, the Local Rule provided:

 4. Appeals from Non-Dispositive Orders

 (a) Any party may appeal from a Magistrate's determination of a non-dispositive matter within 10 days after filing of the Magistrate's order, unless a different time is prescribed by the Magistrate or Judge. Such party shall file with the Clerk and serve on all parties a written notice of appeal which shall specifically designate the order or part thereof appealed from and the basis for objection thereto.... A Judge shall consider the appeal and set aside any portion of the Magistrate's order found to be clearly erroneous or contrary to law.

District of New Jersey Local Rule 40(D)(4)(a).

tered pursuant to 28 U.S.C. § 636(b)(1)(A) must file their objections in the district court within ten days as set forth in Fed.R. Civ.P. 72(a).

The rationale of *Henderson* that, even absent objection, the district court does and should review a magistrate's report and recommended order on motions referred under subparagraph (B) is inapplicable to subparagraph (A) references. Although the district court is under a requirement to review a pretrial ruling upon objection, *see* H.R.Rep. No. 1609, 94th Cong., 2d Sess. 10, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6162, 6170 ("if a party requests reconsideration based upon a showing that the magistrate's order is clearly erroneous or contrary to law then the judge must reconsider the matter"), we cannot assume that the court has reviewed the order in the absence of objection. Moreover, even if the district court is aware of the magistrate's order, if there has been no objection the court is not on notice that the unsuccessful party presses its original position. In such circumstances, to allow parties to challenge magistrates' orders in the first instance on appeal would be to permit them to circumvent the district courts.

For similar reasons, this court has consistently held that it will not, absent extraordinary circumstances, address on appeal issues not originally presented to the district court. *See Danny Kresky Enterprises Corp. v. Magid,* 716 F.2d 206, 214 (3d Cir.1983); *Caisson Corp. v. Ingersoll-Rand Co.,* 622 F.2d 672, 680–81 (3d Cir. 1980). This rule is particularly applicable where, as here, "the defect complained of could have been readily corrected had the matter been called to the district court's attention." *Danny Kresky,* 716 F.2d at 214. We cannot escape drawing the inference that Steelworkers, which never once suggested to the district court that it preferred a jury trial to the bench trial given it, wished to have two bites to the proverbial apple, and awaited that court's decision

on the merits before raising the jury trial issue which it held in reserve for a possible appeal. We cannot condone such trial tactics.

For the above reasons, we hold that by failing to object in the district court to the magistrate's order striking its jury demand, Steelworkers has waived its ability to challenge that order on appeal.[9]

## IV.

### *Assumption of Pension Fund Obligations*

On the merits, Steelworkers challenges the district court's conclusion that NJ Zinc did not assume the obligation in the collectively bargained G & W Pension Plan to fully fund vested benefits upon termination. Although some Steelworker officials testified that NJ Zinc orally adopted the full funding provision, the district court found that "[t]here was no credible testimony that [NJ Zinc] ever represented to [Steelworkers], or any of its members, that [NJ Zinc] would succeed to [the G & W Plan] or that it would adopt [the G & W Plan] as its own pension plan." App. at 365. The court found that the Labor Agreement, which NJ Zinc did adopt, "made clear that the pension agreement was to be considered a separate agreement" and "did not incorporate the terms of the pension agreement." App. at 368. In addition, the court found that NJ Zinc had established the NJ Zinc Plan "in accordance with the terms of The Asset Purchase Agreement" that it had entered into with G & W. App. at 369. Because the NJ Zinc Plan "did not have a full funding provision," the court concluded that NJ Zinc had no obligation "to fully fund all vested benefits upon termination." App. at 370.

Steelworkers does not appear to challenge the district court's finding that there was no explicit adoption of the G & W Plan by NJ Zinc. In any event, there is no

---

**9.** Steelworkers contends that we should apply any such holding prospectively only, citing *United States v. Walters,* 638 F.2d 947 (6th Cir.1981), which did so. We decline the invitation not only because the language in *Siers* should have

put Steelworkers on notice that a waiver rule was likely but also because of the numerous decisions of this court requiring parties to preserve in the district court issues which they wish to raise on appeal.

agreement between NJ Zinc and either G & W or Steelworkers in which NJ Zinc assumed that obligation expressly.

 Steelworkers argues that NJ Zinc's October 1, 1981 letter to its employees promising that they would "continue to be provided with [their] present insurance and benefit coverages," App. at 264, constituted a separate promise to abide by the full funding clause. The district court concluded that this promise "only represented to the employees that under [NJ Zinc's] plan, they would have the same level of benefits as under the [G & W Plan]" and did not represent that NJ Zinc's plan "would contain a full funding provision." App. at 369. Although Steelworkers' interpretation of the reference to "benefits" as encompassing the full funding obligation is not implausible, that construction is also not compelling. The district court's interpretation is a finding of fact based on the language of NJ Zinc's letter and the surrounding evidence, and Steelworkers points to no evidence that persuades us that the district court's interpretation of the letter is clearly erroneous.

Steelworkers argues that the district court considered only whether NJ Zinc expressly assumed the G & W Plan. It contends that the district court's failure to consider the possibility that NJ Zinc implicitly assumed the G & W Plan by its conduct is an error of law. In particular, Steelworkers argues that the district court failed to make findings of fact relevant to implicit assumption and so violated the requirement of Fed.R.Civ.P. 52(a) that the court set out subordinate factual findings sufficient to support its ultimate findings of fact. *See H. Prang Trucking Co., Inc. v. Local Union No. 469*, 613 F.2d 1235, 1238 (3d Cir.1980). Because Steelworkers concedes that the factual record before us is sufficient for a resolution of its claims, it is, in effect, seeking to have us review the district court's ultimate factual findings under a standard more stringent than the clearly erroneous standard ordinarily applicable to such findings. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

We reject this argument. The district court's opinion sets out all the facts surrounding Steelworkers' claims, methodically considers each of Steelworkers' contentions with respect to those facts, and reaches the ultimate factual finding that NJ Zinc did not adopt the plan. This necessarily includes a finding that NJ Zinc neither expressly nor implicitly adopted the plan.[10] We review that finding under the clearly erroneous standard.

Steelworkers relies on various facts to support its implicit assumption argument. Steelworkers argues that the use of the term "Labor Agreement" in NJ Zinc's October 1, 1981 letter adopting "the recently negotiated three-year *Labor Agreement*" signifies an intent to assume all of G & W's agreements with Steelworkers because the proper designation of the collectively bargained agreement without the separate agreements, such as the Pension Plan, was "Basic Labor Agreement". However, the difference in language without more is not sufficient to demonstrate NJ Zinc's intent to adopt the G & W Pension Plan, particularly since the Labor Agreement expressly refers to the G & W Plan as a separate agreement.

Steelworkers also argues that because NJ Zinc adopted those substantive terms of the Memorandum of Understanding between G & W and Steelworkers which amended the G & W Plan, NJ Zinc became bound not to change those substantive provisions of the pension plan for which no changes had been negotiated. Again, we reject Steelworkers' argument. NJ Zinc was not a signatory to the Memorandum. The adoption of the increases in benefit levels provided for in that Memorandum

---

**10.** NJ Zinc could not have adopted the G & W Plan in toto since that Plan applied not only to the three facilities purchased by NJ Zinc but to seven other facilities as well and encompassed not only the active employees for whom NJ Zinc assumed responsibility but also covered retired employees whose pensions remained the responsibility of G & W. The district court recognized this fact, but proceeded to consider whether NJ Zinc had adopted all of "the material provisions" of the G & W Plan.App. at 369.

represents NJ Zinc's compliance with its undertaking in the Asset Purchase Agreement to provide a pension plan "substantially similar" to the G & W Plan. NJ Zinc never undertook to provide an identical pension plan.

Finally, Steelworkers argues that NJ Zinc's failure to notify Steelworkers of the adoption of the NJ Zinc plan[11] and its "failure to negotiate a new pension agreement" following the purchase of assets "raised the necessary inference that it had accepted the substance" of the G & W Plan as it applied to the three facilities purchased. Appellant's Brief at 33. Since a successor employer is not automatically required to adopt its predecessor's collectively bargained agreements, *see NLRB v. Burns Security Services, Inc.,* 406 U.S. 272, 281–82, 92 S.Ct. 1571, 1579, 32 L.Ed.2d 61 (1972), Steelworkers was aware that it had no basis for assuming without more that NJ Zinc had done so. While the failure to negotiate with respect to the pension agreement might have been a violation of NJ Zinc's duties as a successor employer, *id.,* such a failure would be an unfair labor practice which Steelworkers would have been required to raise by filing a charge with the National Labor Relations Board. Although Steelworkers points to its failure to request bargaining as evidence that it believed that the G & W Plan remained in effect, the inference Steelworkers draws is not a necessary one. It remains a fact that Steelworkers never asked NJ Zinc to confirm that the prior plan was in effect. Whatever the reason for such a tactic, the absence of negotiations is not evidence that NJ Zinc implicitly assumed the full funding obligation under the G & W Plan.

In short, none of the evidence pointed to by Steelworkers convinces us that NJ Zinc agreed to be bound by the G & W Plan. NJ Zinc did not expressly adopt the G & W Plan. NJ Zinc promulgated its own plan which complied with its contractual obligations under the Asset Purchase Agreement. No evidence supports the conclusion

that despite its creation of a new plan, NJ Zinc implicitly agreed to continue to be bound by the G & W Plan. Therefore, the district court's finding that NJ Zinc had not adopted the G & W Plan is not clearly erroneous.

### V.

### *Conclusion*

For the reasons set forth above, we will affirm the judgment of the district court.

---

11. Although Steelworkers alludes to the ERISA notice provisions, *see* 29 U.S.C. §§ 1022, 1024(b)(1), the district court treated its claim as based on NJ Zinc's adoption of the G & W full funding obligation and Steelworkers has not separately addressed the ERISA notice provisions on appeal.