**Robert F. ALLSTON, Plaintiff,**

**v.**

**J. Woodrow LEWIS, Bruce Littlejohn, J. B. Ness, William L. Rhodes, Jr., and George T. Gregory, Jr., Justices of the Supreme Court of South Carolina; J. D. Todd, Jr., President, South Carolina Bar; Robert R. Carpenter, Editor, South Carolina Bar "Transcript"; Dan Black, Managing Editor, South Carolina Bar "Transcript"; and The South Carolina Bar, Defendants.**

Civ. A. No. 78-1993.

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 27, 1979.

Robert F. Allston, pro se.

Kenneth P. Woodington, Asst. Atty. Gen., Daniel R. McLeod, Atty. Gen., C. Tolbert

Goolsby, Jr., Deputy Atty. Gen., Columbia, S.C. for defendants.

## ORDER

CHAPMAN, District Judge.

This matter is before the Court on plaintiff's motion for preliminary injunction and defendants' motion to dismiss the Supreme Court Justices of the State of South Carolina, parties defendant to this action. Plaintiff filed his complaint with motion for preliminary injunction in this court on November 24, 1978. Plaintiff alleges an array of constitutional claims in this action for declaratory and injunctive relief as well as for damages under 42 U.S.C. § 1983. The source of the instant controversy is plaintiff's attempt to advertise in the *Transcript*, a publication of the South Carolina Bar which is circulated to its members.

By letter dated November 7, 1977, the plaintiff submitted to the *Transcript* the following advertisement for publication along with a check to cover the cost of this service:

### REQUIREMENT FOR COUNSEL

Private individual requires counsel to associate with North Carolina counsel for purpose of processing action against prominent South Carolina attorneys.

The litigation concerns allegations of record of conspiracy, fraud, malpractice and attempted extortion.

Any attorney who feels he may be of assistance in this matter is invited to contact R. F. Allston, (704) 743–2504; P. O. Box 174 Cashiers, North Carolina, 28717.

After an exchange of correspondences between plaintiff and the managing editor of the *Transcript*, the editor of the publication, Mr. Robert R. Carpenter, advised plaintiff that his advertisement had been rejected and set forth the reasons for the paper's decision. Basically, the position of the editorial staff of the *Transcript* was that plaintiff's advertisement involved solicitation problems and that the paper, as the trade publication of the South Carolina Bar, necessarily limited its content. The Board of Governors of the South Carolina Bar endorsed Mr. Carpenter's handling of the matter, and Mr. Carpenter informed plaintiff of this ultimate policy decision by letter dated January 26, 1978.

Because of *Transcript*'s refusal to run his advertisement, plaintiff brought this action alleging violation of his right to free speech under the First Amendment and his right to due process and equal protection under the Fourteenth Amendment. Plaintiff contends that his advertisement is commercial speech protected under the First Amendment and that the *Transcript*'s decision constituted state action which deprived him of this constitutional right. In prosecution of this action, plaintiff has named as defendants the two foremost officers of both the South Carolina Bar and the *Transcript*, the South Carolina Bar and the Justices of the Supreme Court of South Carolina. In support of his inclusion of the five members of the State Supreme Court, plaintiff asserts that this body governs and has control over the South Carolina Bar, which, he alleges, is an agency of the Supreme Court of South Carolina. Plaintiff does not allege that these defendants actively participated in any manner in the editing or management of the *Transcript*.

Plaintiff's purpose in running his advertisement is to procure South Carolina Counsel to assist him in the prosecution of certain alleged claims against three South Carolina attorneys, who plaintiff contends, in effect, swindled him of an inheritance. This alleged professional misconduct occurred in the early 1970's, and plaintiff asserts that his inability to locate South Carolina counsel has hindered his prosecution of these alleged claims. Although plaintiff has had the assistance of Thomas F. Loflin, III, Esquire, an attorney in the state of North Carolina, plaintiff argues that his causes of action involve special questions of South Carolina law and require the assistance of South Carolina counsel to effectively litigate them. Aside from the present suit, plaintiff is presently a party in two other actions. The suit adjudicating

the liability of the three attorneys, originally brought in this same court, is currently on appeal to the Fourth Circuit and plaintiff is also the defendant in an action instituted by one of the attorney defendants in the earlier mentioned suit to recover attorney fees. This latter suit is now on appeal to the Supreme Court of South Carolina. The advertisement which is the subject of the present suit is an effort by plaintiff to find a South Carolina attorney to assist him with these two actions.

On January 31, 1979, the Court held a hearing on plaintiff's motion for a preliminary injunction and defendants' motion to dismiss, as to the State Supreme Court Justices, for failure to state a claim upon which relief may be granted. Upon arguments concerning plaintiff's motion for a preliminary injunction, which sought only the publication of the aforementioned advertisement, it became apparent that the plaintiff desires as final relief an Order of this Court requiring the *Transcript* to print any advertisement which the plaintiff might tender. As for the printing of the advertisement which plaintiff has already submitted the *Transcript*, defendant Todd by letter dated December 11, 1978, offered to publish plaintiff's advertisement provided it was amended to state that any lawyer responding to the ad and representing plaintiff was to do so without charging any fee. This caveat evolved from statements made in plaintiff's memorandum and affidavit in support of his motion to this effect, that he made no promise of remuneration. At the time of the hearing plaintiff has yet to respond to defendants' proposal.

The Court will first address defendant's motion to dismiss the Justices of the South Carolina Supreme Court for failure to state a claim upon which relief can be granted. Plaintiff proposes two reasons why these Justices are proper parties. As one ground, plaintiff argues that, since the State Supreme Court established and supervises the Bar, then, this judicial body has ultimate control over the *Transcript*. His second basis is that, should disciplinary proceedings be instituted against an attorney responding to his advertisement, it will be due to

enforcement of a rule of the South Carolina Supreme Court by that same entity. In his prayer for relief, plaintiff seeks to have every rule or regulation, including disciplinary rules, used as a basis for rejecting his advertisement, declared unconstitutional. As authority for the inclusion of these Justices as proper parties, plaintiff cites *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

■ In *Bates*, an attorney, who had been subjected to disciplinary proceedings as a result of enforcement of Arizona's ethical code for attorneys, directly challenged the constitutionality of such action. However, in the present case, no ethical proceedings have been instituted against any attorney; plaintiff, at best, speculates the Supreme Court will approve disciplinary procedures pursuant to its rule on solicitation by attorneys. This Court may not premise its decision on what it anticipates the Supreme Court might do in the future against someone who is not a party to this action. Prospective disciplinary proceedings as a basis for making the South Carolina Supreme Court Justices parties to the present action cannot be sustained. Moreover, if plaintiff is seeking to argue that the South Carolina Supreme Court's disciplinary rule somehow acts to "chill" his right to free speech, the Supreme Court refused in *Bates* to apply the "First Amendment overbreadth doctrine" to professional advertising and other commercial speech. It followed, instead, "the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court." 433 U.S. 350, 380–381, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810.

■ Having concluded that plaintiff cannot challenge the disciplinary rule in question at this time, this Court further decides that the mere fact that the State Supreme Court has supervisory control over the Bar does not create a claim against these defendants for either injunctive or monetary relief. It is well established that the principles of *respondeat superior* do not

apply to a § 1983 action. *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977). Thus, plaintiff cannot maintain a claim for damages against these defendants on the basis of his allegations. As stated earlier, plaintiff has not alleged that the Justices of the South Carolina Supreme Court partake in any manner in the editing and supervision of the *Transcript*, therefore, these defendants are not proper parties for any injunctive relief sought by plaintiff, since they are not involved in the publication decisions complained of. Because plaintiff has failed to state a claim against defendants Lewis, Littlejohn, Ness, Rhodes, and Gregory upon which relief can be granted, the Court grants defendant's motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss these defendants from this action.

Turning to plaintiff's motion for a preliminary injunction, the Court recognizes that this measure is severe and that it must use care in determining if the circumstances warrant its application. Where a trial court has before it such motion, the Court is to apply the "balance-of-hardship" test by first weighing "the 'likelihood' of irreparable harm to the plaintiff against the 'likelihood' of harm to the defendant." *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing Co., Inc.*, 550 F.2d 189, 194, 195 (4th Cir. 1977). This test correctly emphasizes the purpose of a preliminary injunction, which is to maintain the *status quo ante litem* and prevent a change that may result in irremediable injury to the plaintiff, provided that an excessive burden is not placed upon the defendant by such action. 550 F.2d 189, 195.

Upon further elaboration of the circumstances of the present case, it is readily ascertainable that plaintiff has not shown the likelihood of irreparable harm to him if an injunction were not to be issued. The relief that plaintiff ultimately seeks is one this Court cannot provide him: that is the employment of South Carolina counsel. The present controversy concerns the means plaintiff desires to locate an attorney and his attempt to establish an unabridged right to publish in that medium. In reviewing the record before it and that which was brought out at the hearing, the Court determines that a preliminary injunction is unwarranted.

First of all, the two lawsuits in which plaintiff is involved and seeks counsel have already progressed to the stage where a South Carolina attorney could be of little assistance. The suit against plaintiff for attorney's fees is now on appeal to the Supreme Court of South Carolina for decision on the briefs that are already filed. Likewise, plaintiff's suit against the three attorneys, in which summary judgment was entered against him, is on appeal to the Fourth Circuit. Since plaintiff has retained North Carolina counsel who may appear in and argue this appeal, plaintiff will not suffer irreparable injury should South Carolina counsel not be associated.

Indeed, as the transcript of earlier hearings in this case now on appeal and the arguments of plaintiff at the hearing on January 31, 1979, revealed, the trial judge in plaintiff's earlier asserted federal claim, the Honorable Robert W. Hemphill, agreed to waive the local District Court rule and permit Mr. Loflin to represent plaintiff in this Court without the association of counsel from this state. The plaintiff, nevertheless, failed to procure the attendance of Mr. Loflin in this Court to admit him for the purposes of that case. Plaintiff has acknowledged that Mr. Loflin assisted him in the drafting of his pleadings, motions, and memoranda that are filed in this court. Gauging from their detail, albeit unnecessary and improper, the Court finds lengthy presentations of South Carolina law which suggest that knowledge of its peculiarities is not confined exclusively to members of the South Carolina Bar, as plaintiff has argued in support of his cause. Thus, the plaintiff has once refused the opportunity of assistance of counsel who had the same capabilities and sources for learning the intricacies of South Carolina law as a corresponding member of the Bar of this state.

Also of significance to the Court is that, although plaintiff contends time is of the

essence, he lingered for three years in his pursuit of local counsel. The form letters that were directed to approximately twenty law firms, and are claimed by plaintiff to be an indication of his unrequited diligence, were sent out three years ago. Plaintiff made no further attempts to retain South Carolina counsel until his effort to have his advertisement published in the *Transcript,* the subject of the present suit. When advised to use the Bar's Lawyer Referral Service, plaintiff declined to do so on the ground that he may end up paying a fee for an initial conference with an attorney who may refuse to represent him. Although use of this system to locate an attorney may prove expensive, plaintiff never once availed himself of it. The fact that plaintiff has not contacted nor sent out any more letters to any South Carolina attorneys over the past three years suggests that, in his estimation, inability to associate South Carolina counsel would not result in irreparable harm. If there exists a danger of irreparable injury to plaintiff for lack of local counsel, although the Court has stated it does not believe this is so, due to the posture of the two lawsuits, this threatened harm was precipitated by the unexplained delay of plaintiff himself. Plaintiff would seem to be barred by laches for sleeping upon his rights. *Mims v. Varborough,* 343 F.Supp. 1146, 1162 (D.C.S.C.1971), aff'd 461 F.2d 1266.

Finally and most importantly in consideration of plaintiff's motion, defendants refused to publish plaintiff's ad in January, 1978 yet plaintiff waited until November 24, 1978, to file this suit to compel publication. His own conduct in this regard betrays his present contention that time is of the essence. This eleven month interval before bringing suit to force publication suggests that plaintiff himself did not view the situation as one of impending irremediable injury. Moreover, since the initiation of the present action, defendants have offered to print the advertisement, thus providing plaintiff with the remedy sought by his present motion and making judicial intervention, at this stage, unnecessary. Assuming impending irreparable harm, there is no need to invoke the equitable power of the court since plaintiff has been offered his preliminary remedy by the defendants.

At the hearing the Court ascertained that plaintiff's refusal to resubmit his ad for publication is linked to the ultimate remedy prayed for his complaint, an injunction requiring the *Transcript* to publish any ad tendered to it by plaintiff. To the extent plaintiff is seeking to have a preliminary injunction directed toward such remedy, the motion is denied. Not only does the motion seek printing of the one ad quoted in the complaint, but granting such a motion would give plaintiff, in effect, the final relief sought and not act merely to preserve the *status quo ante litem.* Such relief is beyond the scope and purpose of a preliminary injunction. *Blackwelder,* 550 F.2d 189, 195.

Since plaintiff has failed to show the likelihood of irreparable injury and that a preliminary injunction is necessary to preserve the plaintiff's rights pending trial, the Court denies plaintiff's motion. During the hearing on this matter both sides developed arguments concerning the underlying merits of plaintiff's claim, and the Court will make some comment thereon.

Plaintiff made clear in his argument before this Court that he is seeking, by this action, an injunction compelling the *Transcript* to print any additional ad he might compose, if his first one goes unanswered. Plaintiff is correct in surmising that it is now well established that "commercial speech" is protected under the First Amendment. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). However, regulations as to "time, place and manner" are permissible "provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information." 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346. Plaintiff argues that in any

future advertisements he would elaborate upon and outline the alleged facts of his supposed claim against the three attorneys. In light of the fact that such an advertisement may well be libelous and that plaintiff's purpose in running the advertisement, that is the contacting of the members of the Bar and advising them of his case, would be fulfilled by publication of the original advertisement, this Court will not provide plaintiff with the blanket license to publish he seeks. After a printing of the present ad, later restrictions as to future advertisements would be considered as reasonable limitation on the manner of publishing plaintiff's speech. The message of plaintiff's solicitation would have been broadcasted; plaintiff's First Amendment rights are not violated by the defendants' refusal to print sensationalized rehashes of the same advertisement. These reasonable restrictions would be in the best interest of the *Transcript* and leave open every newspaper of general circulation as a channel for plaintiff's communication. To the extent plaintiff's action for a permanent injunction seeks this final relief, the Court detects no reason for disposing of it any differently from his motion for preliminary relief.

■ Although the Court makes no ruling as to the presence of state action in this case, the preceding determination was made under the assumption this required element is present. Absent state action, the First Amendment right of the plaintiff butts squarely against that of the *Transcript* to freedom of the press, and compelling editors or publishers to publish that which " 'reason' tells them should not be published" violates the First Amendment rights of the latter. It has even been suggested that the presence of state action in the publication of a newspaper fails to abrogate these rights of the publisher. "The First Amendment . . . draws no distinction between the press privately owned, and press owned otherwise." *Lehman v. City of Shaker Heights*, 418 U.S. 298, 306, 94 S.Ct. 2714, 2718, 41 L.Ed.2d 770 (1974), Douglas, J., concurring.

■ An additional basis for the Court's determination in favor of defendants is its failure to discern a First Amendment forum in the *Transcript*. Although the *Transcript* is a newspaper publication it is, in essence, a trade publication of the attorneys in this state, limited in nature, and not intended as a voice of the general public. The *Transcript* was not established nor does it serve as a public forum. Because no First Amendment forum is present, the defendants' refusal to publish plaintiff's advertisements does not "rise to the dignity of a First Amendment violation", unless the defendants' policies and practices are arbitrary, capricious, or invidious. *Lehman*, 418 U.S. 298, 304, 94 S.Ct. 2714. Defendants have met this burden by showing a reasonable relation between this editing policy and their refusal to print additional advertisements of plaintiff—"avoiding the 'gray areas' of professional ethics, maintaining the informational character of the publication, limiting lawyer referrals to other, separate Bar Association services focusing on the needs of the members of the bar as opposed to the general public." [Defendants' Brief In Opposition, p. 6].

■ The alleged infringement of plaintiff's constitutional rights is not confined to the First Amendment. Plaintiff argues that defendants' refusal to publish any advertisement that he might submit violates his rights to equal protection and due process under the Fourteenth Amendment. This Court has previously decided that such actions by defendants do not transgress rights guaranteed to plaintiff under the First Amendment. Thus an equal protection analysis does not require strict scrutiny, but, rather, a test of rationality. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 49 L.Ed. 520 (1976). As discussed earlier, a decision by the *Transcript* to reject additional advertisements proffered by plaintiff on the same subject matter is rationally related to a legitimate objective of that publication and furthers this purpose. Consequently, plaintiff, at this point, has not been denied equal protection of the laws.

Under similar reasoning, defendants' actions do not deprive plaintiff of due process. Although the Fourteenth Amendment's protection of liberty encompasses freedom of speech, *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), this right of plaintiff would not be infringed by future refusals of defendants to accept additional advertisements on the same subject matter for the same purpose. Since this Court has determined that this anticipated conduct of the defendants would not violate plaintiff's right to free speech, there would be no deprivation of the liberty interest plaintiff is asserting and, thus, no impermissible infringement of due process.

For the preceding reasons, the plaintiff's motion for a preliminary injunction is, and the same is hereby, denied. Defendant's motion to dismiss the Justices of the South Carolina Supreme Court is, and the same is hereby, granted.

AND IT IS SO ORDERED.