Brian M. BARNARD,
Plaintiff–Appellant,

v.

Hans Q. CHAMBERLAIN, Commissioner Utah State Bar; Randy Dryer, Commissioner Utah State Bar; James Z. Davis, Commissioner Utah State Bar; the Hon. Pamela Greenwood, Commissioner Utah State Bar; Stewart M. Hanson, Jr., Commissioner Utah State Bar; Donald B. Holbrook, Commissioner Utah State Bar; Jackson Howard, Commissioner Utah State Bar; Kent M. Kasting, Commissioner Utah State Bar; Gordon J. Low, Commissioner Utah

State Bar; Reed Martineau, Commissioner and President Utah State Bar; Anne Stirba, Commissioner Utah State Bar; and Stephen Hutchinson, Executive Director, Utah State Bar, Defendants–Appellees.

No. 88–2131.

United States Court of Appeals,
Tenth Circuit.

March 8, 1990.

Brian M. Barnard (C. Dane Nolan with him on the brief), Utah Legal Clinic, Salt Lake City, Utah, for plaintiff-appellant.

Glenn C. Hanni (Brett G. Pearce with him on the brief), Strong & Hanni, Salt Lake City, Utah, for defendants-appellees.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and BROWN, District Judge.*

WESLEY E. BROWN, Senior District Judge.

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff-appellant, a member of the Utah State Bar, brought this action against the Utah State Bar's governing board and certain of its employees. Plaintiff claimed that the defendants had deprived him of his constitutional right to free speech and his right to due process of law. Plaintiff sought damages, injunctive relief, and attorney's fees. The district court granted the defendants' motion

---

* The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

for summary judgment and this appeal followed. We affirm.

*Facts.*

The Utah State Bar is a governmental entity established by state law and serving as an administrative agency of the Utah Supreme Court. The Bar was created for the purposes of, among other things, supervising the conduct of attorneys in the state of Utah, improving the administration of justice, and serving the legal profession. The defendants in this action are Commissioners of the State Bar, except for the defendant Hutchinson, who is its executive director.

The defendants publish a newsletter entitled the *Utah Bar Letter* approximately ten times per year. The *Bar Letter* is mailed to the members of the Utah Bar. Its contents are usually written and prepared by staff members and articles written by the Bar Commissioners are often published. The cost of publishing the *Bar Letter* is paid from the budget of the state bar, which is funded from mandatory dues assessed against Utah attorneys.

In order to understand the plaintiff's claim in the instant suit, it is necessary to review the facts surrounding a previous suit filed by plaintiff. In March of 1987, plaintiff submitted a letter to the editor of the *Utah Bar Letter*. The letter was critical of the Bar Commission's support for the Utah Law and Justice Center.[1] The Bar Commissioners, who exercise editorial control over the *Utah Bar Letter*, refused to publish plaintiff's letter. Prior to this time, the *Bar Letter* had solicited comments and letters from Bar members and had routinely published any submitted letters. The Commission did not have any established guidelines for the publication of letters. Plaintiff filed suit, contending that the Commissioners were violating his first amendment rights.[2] Plaintiff alleged that the Commissioners had made the *Bar Letter* a "designated public forum" by their solicitation and publication of letters and he further alleged that the Commissioners were engaging in impermissible viewpoint-based discrimination by not publishing his letter. The parties subsequently reached a settlement under which the Bar agreed to print plaintiff's letter, to pay plaintiff's attorney's fees, and to pay one dollar as nominal damages. In return, plaintiff agreed to dismiss with prejudice all pending claims against the Commissioners. The district court entered an order of dismissal based upon the stipulation and agreement of the parties. The stipulation read in part:

> The defendants do not intend to publish letters to the editor in the Utah Bar Newsletter in the immediate future. The defendants shall study the issue as to the future publication of such letters. If the defendants determine in the future to publish such letters, defendants shall adopt and promulgate written content-neutral policies, and criteria for the consideration and publication of submitted "Letters to the Editor." Any content-based regulation shall be narrowly drawn to conform with lawful compelling interests.

The defendants published plaintiff's letter in the August/September 1987 edition of the *Bar Letter*. The letter was accompanied by the following notice: "The Bar Commission is studying revisions to the publications policies of the Utah State Bar. Pending the outcome of this study and until further notice, the letters to the editor forum is withdrawn and no further letters will be published." Thereafter, the defendants ceased to publish letters to the editor in the *Bar Letter*.

After reviewing the January 1988 issue of the *Bar Letter*, plaintiff concluded that the defendants had resumed a practice of publishing opinions of bar members. This conclusion was based on three articles that appeared in the January 1988 issue. One was an article by a Utah attorney concerning the ethical obligation to represent unpopular clients. The other two were "pro" and "con" letters by two Utah attorneys on

---

1. The Utah Law and Justice Center is a new building which is intended to house the Utah State Bar and other law-related projects.

2. The first suit was *Barnard v. Utah State Bar, et al.*, Case No. C–87–0284, filed in the U.S. District Court for the District of Utah.

the issue of mandatory continuing legal education. Based on these articles, in February 1988 plaintiff submitted an "opinion/article" to the *Bar Letter* for publication. The article, like plaintiff's previous letter, criticized the Utah State Bar for its use of bar dues to help finance the Utah Law and Justice Center. The minutes from a February 19, 1988 meeting of the Utah Bar Commission reflect the following discussion of plaintiff's article by the Commission:

> Mr. Hutchinson described an article submitted by Brian Barnard with a request from Mr. Barnard that it be published in the *Bar Letter*. Discussion followed with Commissioner Hanson suggesting that publication be deferred pending the development of a policy on publications by the subcommittee previously appointed. Commissioner Holbrook suggested that the article should be declined publication on the grounds of libelous content and moved to deny publication on the grounds that the proposed article contains libelous statements. Second by Commissioner Chamberlain. Motion carried with negative vote by Commissioner Greenwood. It was the position of the Bar Commission that the Letters to the Editor Forum in the *Bar Letter* had not been reopened and that the policy for letters was still being developed. Motion to reactivate the policy subcommittee by Commissioner Hanson, second by Commissioner Greenwood. Carried unanimously.

After the defendants refused to publish the plaintiff's "opinion/article," plaintiff filed this suit alleging that the defendants had deprived him of his right to free speech under the First and Fourteenth Amendments and his right to due process of law. The district court granted the defendants' motion for summary judgment, finding that the *Utah Bar Letter* had been closed as a limited public forum after the settle-

ment of the first suit in July 1987 and that it had remained closed as a forum since that time.[3]

*Appellant's § 1983 Claim.*

 To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). We first address appellant's contention that the defendants were acting under color of state law. We note that the record is not clear as to the exact nature of the relationship between the Utah State Bar, the Bar Commission, and the *Utah Bar Letter.* It is undisputed, however, that the *Bar Letter* is a publication of the Utah State Bar, which is a governmental entity established by state law and created as an administrative agency of the Utah Supreme Court. The Utah State Bar is an "integrated" bar, meaning that Utah attorneys must belong to the bar in order to practice law in the state. *Compare Niehaus v. Kansas Bar Association,* 793 F.2d 1159, 1164 (10th Cir.1986) *with Keller v. State Bar of California,* 767 P.2d 1020 (Cal.1989). The defendants exercise control over the publication of the *Bar Letter* by virtue of their positions as officers of the Utah Bar. Keeping in mind our duty when reviewing a motion for summary judgment to draw all factual inferences in the manner most favorable to the party opposing summary judgment, *Ewing v. Amoco,* 823 F.2d 1432, 1437 (10th Cir.1987), we find sufficient facts alleged from which one could conclude that the defendants' conduct amounted to state action and that the refusal to publish the plaintiff's article was taken under color of state law. *See Estiverne v. Louisiana State Bar Ass'n,* 863 F.2d 371, 376 (5th Cir.1989). *See also Keller v. State Bar of California,* 47 Cal.3d 1152, 255 Cal.Rptr. 542, 767 P.2d

---

**3.** Appellees point out that after judgment was entered by the district court in this case the Bar Commission adopted guidelines relating to the publication of letters to the editor of the *Bar Letter.* Appellees argue that the adoption of such guidelines makes appellant's claim moot.

We agree with appellant, however, that the appeal is not moot in view of the claim for damages against the defendants. *See e.g., Winsett v. McGinnes,* 617 F.2d 996, 1004 (3rd Cir.1980).

The validity of the new guidelines is not an issue before this court on appeal.

1020 (1989) (Integrated bar found to be a state actor), *cert. granted,* — U.S. —, 110 S.Ct. 46, 107 L.Ed.2d 15 (1989). We therefore proceed to address appellant's argument that he was deprived of a right secured by the Constitution and laws of the United States.

### First Amendment Claim.

In order to facilitate the analysis of free speech claims, the Supreme Court has established what is referred to as "forum analysis." Under this approach, "[t]he existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Local Educator's Ass'n.*, 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983). Forum analysis applies to instrumentalities "used for the communication of ideas" as well as to locations under government control. *Perry*, 460 U.S. at 49 n. 9, 103 S.Ct. at 957 n. 9. Thus, the scope of appellant's first amendment rights depends on the nature of the forum to which he seeks access.

■ The Supreme Court has identified three types of forums in public property. First are public forums that "by long tradition or by government fiat have been devoted to assembly or debate." *Cornelius v. NAACP Legal Defense & Education Fund*, 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). The rights of the state to limit speech in such traditional public forums are sharply circumscribed. *Perry*, 460 U.S. at 45, 103 S.Ct. at 954–55. For a state to enforce a content-based exclusion of speech in a traditional public forum, the state must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Id.* A second type of forum is the "designated public forum," which consists of public property that the state has opened for use by the public as a place for expressive activity. *Perry*, 460 U.S. at 45, 103 S.Ct. at 954–55. Although a state is

not required to indefinitely retain the open character of a designated public forum, as long as it does so it is bound by the same standards as apply in a traditional public forum. *Id.*

■ Public property which is not by tradition or designation a forum for public communication, sometimes called a "nonpublic forum," is governed by different standards. The First Amendment "does not guarantee access to property simply because it is owned or controlled by the government." *United States Postal Service v. Greenburgh Civic Ass'ns.*, 453 U.S. 114, 101 S.Ct. 2676, 69 L.Ed.2d 517 (1981). In a nonpublic forum, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. *Perry*, 460 U.S. at 46, 103 S.Ct. at 955–56.

■ In the present case, appellant contends that the *Utah Bar Letter* became a designated public forum due to the appellees' practice of publishing articles in the *Bar Letter*. Appellees, on the other hand, argue that the *Bar Letter* became a nonpublic forum after the first suit was settled because appellees ceased publishing letters to the editor in the newsletter.[4] Although the facts of this case are somewhat different than *Estiverne v. Louisiana State Bar*, 863 F.2d 371 (5th Cir.1989), the reasoning of that case clearly applies to the issues we must determine. Both cases present a similar issue: whether a publication of an integrated state bar is a designated public forum or a nonpublic forum.

In *Estiverne*, the plaintiff was a member of the Louisiana Bar who was charged with a violation of disciplinary rules. The *Louisiana Bar Journal*, a publication of the Louisiana Bar Association, published a report on the disciplinary proceedings against the plaintiff. The plaintiff requested that the Bar Association publish plaintiff's ex-

---

4. Appellant concedes that the *Bar Letter* is not a traditional public forum. Also, appellant concedes that the appellees could have lawfully maintained the *Utah Bar Letter* as a nonpublic forum.

planation of the charges against him, which the Bar refused to do. Plaintiff then sued the Bar, contending that the refusal to publish his reply violated the First Amendment. The Fifth Circuit held in *Estiverne* that the *Louisiana Bar Journal* was a nonpublic forum and that the Bar's refusal to publish the plaintiff's reply was reasonable in light of the purposes of the magazine.

In the case before us, appellant argues that the *Bar Letter* was a government-sponsored forum for the expression of opinions by members of the Utah Bar. This contention, however, is not supported by the undisputed facts before us. "The simple fact that the government sponsors a medium of communication does not ... automatically render that means of communication a public forum. Rather, a forum may be considered *nonpublic* where there is clear evidence that the state did not intend to create a public forum or where the nature of the property is inconsistent with the expressive activity, indicating that the government did not intend to create a public forum." *Estiverne,* 863 F.2d at 376 (citing *Cornelius v. NAACP Legal Defense & Education Fund,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985)). The record before us shows that the Utah Bar Association's intent to close the *Bar Letter* as a public forum was unequivocal and that the Bar Association did not deviate in practice from their declared intention. As part of the parties' resolution of plaintiff's first suit, the parties stipulated that the *Bar Letter* would not publish any letters to the editor until guidelines for publication of such letters were established. From the time the first lawsuit was settled until the time plaintiff submitted his "opinion/article" to the *Bar Letter,* no letters to the editor were published in the *Bar Letter.* There is no evidence that any randomly

submitted opinions of bar members, whether or not denominated as "letters to the editor," were published in the *Bar Letter* during this period.[5] The *Bar Letter* published a statement in the August/September 1987 issue declaring that "[U]ntil further notice, the letters to the editor forum is withdrawn and no further letters will be published." The Bar Association's clear intent after the settlement of the prior lawsuit was to close the *Bar Letter* as a public forum. *See Cornelius,* 473 U.S. at 803, 105 S.Ct. at 3439 ("We will not find that a public forum has been created in the face of clear evidence of a contrary intent....").

Despite this evidence of the Bar's intent, appellant argues that in practice the appellees made the *Bar Letter* a public forum by the publication of three articles by local attorneys in the January 1988 issue. The publication of these three articles, however, can hardly be said to show an intent to create a forum "for indiscriminate use by the general public." *Perry,* 460 U.S. at 47, 103 S.Ct. at 956. In this regard, we agree with the reasoning of the court in *Estiverne,* where the court noted that some informational mediums were not intended to be used by the general public to exercise a right of expression, but were instead intended to serve a particular role of a state agency. Thus, the court stated:

> We conclude that the *Louisiana Bar Journal,* as the trade publication of the Louisiana Bar, similarly serves a narrow, instrumental role. It was not established as an open forum for the expressive activities of the public, or of all members of the Bar. Rather, the invitation is to *submit* articles and advertisements for consideration by the editorial board, within the framework of editorial discretion necessary to fulfill the magazine's purposes. *See Allston [v. Lewis ],*

---

5. Appellant contends that his submission to the *Bar Letter* was an "opinion/article", not a letter to the editor, and that it was therefore outside the *Bar Letter*'s moratorium on letters. This argument is not persuasive. Simply because appellant did not begin his submission with "Dear Editor" does not change the fact that the *Bar Letter* refused to publish randomly submitted opinions from bar members.

Although appellant has alleged that the *Bar Letter* allowed many individuals "to disseminate information" through the *Bar Letter* (e.g. through advertisements and reports on current events) there is no evidence that the *Bar Letter* published any randomly submitted opinion articles of the type written by appellant.

480 F.Supp. [328] at 334 [D.S.C.1979] (newspaper published by South Carolina Bar Association was trade publication and not a first amendment forum). Estiverne has adduced no evidence to show that the policy and practice of the Bar Association has been to treat the *Bar Journal* as a public forum—even with respect to members of the Bar. *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3449. Moreover, the "right of reply" that he seeks is not compatible with the nature and purposes of the magazine. *Id.* In order to fulfill the *Bar Journal*'s purposes as a trade journal, its editors must have some degree of discretion analogous to that extended by editors of private trade journals—with respect to both articles and advertisements. *See Muir [v. Alabama Educational Television Commission]*, 688 F.2d [1033] at 1044 [ (5th Cir.1982) ]; *see also Cornelius*, 473 U.S. at 805–06, 105 S.Ct. at 3451; *Lehman [v. City of Shaker Heights]*, 418 U.S. [298] at 303, 94 S.Ct. [2714] at 2717 [41 L.Ed.2d 770 (1974) ]. The district court therefore properly held that the *Bar Journal* is a nonpublic forum.

*Estiverne*, 863 F.2d at 381.

We agree with the *Estiverne* court that the nature and purpose of a forum such as a bar journal is not compatible with unrestricted public access, or even with unrestricted access by members of the Bar. The *Bar Letter* is, in essence, a trade journal, which is designed to serve a limited purpose. *See Allston v. Lewis*, 480 F.Supp. 328, 332 (D.S.C.1979), *aff'd* 688 F.2d 829 (4th Cir.1982). Clearly, the Bar Commission must have some editorial discretion to ensure that the *Bar Letter* is used to further the purposes of the Utah State Bar. The forum to which appellant seeks access—i.e. the publication of articles in the *Bar Letter*—was not intended to be a forum for the expression of opinions by all members of the Bar. *Cf. Estiverne*, 863 F.2d at 379–80 ("[A]lthough the *Bar Journal* does not operate under a regulatory scheme, it has a responsibility to serve the purposes of the Bar Association. In man-

aging such a medium, the state agency 'must necessarily make discriminating choices,' sometimes based on content, as to what material ... to publish.")

The three articles in the January 1988 issue of the *Bar Letter*, pointed to by appellant as evidence of the Bar's policy of publishing opinion articles, do not show an intention to create an open forum. *See Planned Parenthood v. Clark Co. School District*, 887 F.2d 935, 940 (9th Cir.1989) ("The government does not create a public forum by inaction or by permitting limited discourse, but only by *intentionally* opening a nontraditional forum for public discourse.") The first two articles were "pro" and "con" positions on continuing legal education by two local attorneys. These articles were written at the request of the Bar's CLE advisory committee and were published as part of an extensive discourse in the January *Bar Letter* on a proposed rule change regarding mandatory CLE. The Utah Supreme Court rules required the CLE advisory committee to publish the proposed rule and to receive comments on it. According to the appellees' uncontested affidavits, the advisory committee and Mr. Hutchinson, the executive director of the Bar, decided that the best way to inform the Bar about the proposed rule would be to publish a discussion of the rule in the *Bar Letter*. The other article that appellant believes supports his position also appeared in the January 1988 issue of the *Bar Letter*. This article was written at the request of the Bar's president, Reed Martineau, to rebut public criticism of a local attorney who had represented an unpopular client. The article reminded attorneys of the ethical duty to represent unpopular clients and awarded the local attorney a special commendation from Mr. Martineau for his service. These articles were not randomly submitted opinions of bar members but were articles written at the request of the Bar in order to fulfill the Bar Association's fundamental purposes. The publication of these articles cannot reasonably support a conclusion that the defendants opened up the *Bar Journal* as a

forum for the expression of opinions by all bar members.[6] Based on the record before us, we have no trouble in affirming the district court's finding that the *Utah Bar Letter* was a nonpublic forum at the time appellant submitted his "opinion/article."

■ As the *Estiverne* court noted, the fact that a bar publication is a nonpublic forum does not mean that its editors are vested with unfettered editorial discretion. *Estiverne*, 863 F.2d at 381. A state actor's restrictions on access to a nonpublic forum must be reasonable in light of the purposes of the forum and the state may not restrict access to the forum on the basis of the viewpoint of the proffered speech. *Cornelius*, 473 U.S. at 806, 105 S.Ct. at 3451; *Perry*, 460 U.S. at 46, 103 S.Ct. at 955–56.

Although appellant contends that appellees refused to publish his opinion article because of the viewpoint the article expressed, the record indicates clearly that the *Bar Letter* refused to publish any randomly submitted opinions, regardless of their viewpoint. The *Bar Letter*'s policy of not publishing submitted letters was instituted as part of the settlement of plaintiff's first lawsuit against the *Bar Letter*. In fact, the court's order entered in the first suit forbade appellees from publishing any letters to the editor until such time as they developed guidelines concerning such letters. At the State Bar Commission meeting of February 19, 1988, the Commission voted to table discussion of developing guidelines for letters to the editor until the next Bar meeting. The Commission then voted to deny appellant's request that his opinion article be published in the *Bar Letter*. Although the Commissioner voicing the motion to deny publication stated that

the article should be declined publication "on the grounds of libelous content," the vote was followed by this clarification: "It was the position of the Bar Commission that the Letters to the Editor Forum in the *Bar Letter* had not been reopened and that the policy for letters was still being developed." This was the Board's final statement regarding the plaintiff's article. We think the series of events leading up to this incident, including the court order forbidding the publication of letters to the editor as well as the defendants' declared intention and practice of not publishing such letters, shows beyond dispute that the defendants refused to publish appellant's submission based on their stated policy of not publishing submitted letters. As such, the refusal to publish the letter was not viewpoint-based discrimination. Moreover, given the fact that a court order prohibited the appellees from publishing letters until they adopted content-neutral guidelines, the *Bar Letter*'s policy of refusing to publish submitted opinion letters was manifestly reasonable.[7]

We conclude that under the facts of this case the *Utah Bar Letter* was a nonpublic forum and that the Bar Commission's refusal to publish plaintiff's opinion was not impermissible viewpoint-based discrimination and did not violate appellant's first amendment rights. Our finding that appellees did not violate appellant's first amendment rights similarly defeats his claim that he was deprived of a liberty interest without due process of law. *Estiverne*, 863 F.2d 371, 383. Accordingly, plaintiff has not shown the violation of a right secured by the Constitution and laws of the United States and the defendants are entitled to judgment as a matter of law.

6. Similarly, appellant's allegation that the *Bar Letter* routinely published advertisements or announcements of upcoming meetings does not show an intent to open up the forum for expression of public opinion. *Allston v. Lewis*, 480 F.Supp. 328 (D.S.C.1979).

7. As we noted before, our holding should not be construed as granting the editors of the *Bar Letter* unfettered discretion. It bears repeating that the *Bar Letter*, which we assume for pur-

poses of this opinion is a state actor, is subject to first amendment constraints that do not apply to the private press. Even where a nonpublic forum is concerned, restrictions on access to the forum must be reasonable in light of the purposes of the forum and may not be arbitrary or capricious. Moreover, a state actor may not deny access to the forum simply on the basis of the viewpoint of the proffered speech. *Estiverne*, 863 F.2d at 381–82.

The judgment of the district court is AFFIRMED.