

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-1998

# Continental Casualty Co v. D'Andrea

Precedential or Non-Precedential:

Docket 97-5004

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Continental Casualty Co v. D'Andrea" (1998). *1998 Decisions.* Paper 156.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/156

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 10, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5004

CONTINENTAL CASUALTY COMPANY

v.

DOMINICK D'ANDREA, INC.,

      Defendant/Third-Party Plaintiff

v.

ALMONESSON ASSOCIATES; TARQUINI ORGANIZATION;
THE DOUGLAS COMPANY; JOHN DOE 1-10, being a
fictitious person, corporation or entity,

      Third-Party Defendants

Dominick D'Andrea, Inc.,

      Appellant

Appeal from the United States District Court
For the District of New Jersey
D.C. No.: 93-cv-1765

Argued: January 22, 1998

Before: SLOVITER, LEWIS, and ROSENN, Circuit Judges.

(Opinion Filed July 10, 1998)

      A. Richard Bailey (Argued)
      Cozen & O'Connor
      1900 Market Street
      Philadelphia, PA 19103
      Counsel for Appellee

          Audrey J. Copeland (Argued)
          Marshall, Dennehey, Warner,
           Coleman & Goggin
          1845 Walnut Street
          Philadelphia, PA 19103
          Counsel for Appellant

OPINION ANNOUNCING THE JUDGMENT
OF THE COURT

ROSENN, Circuit Judge.

In this appeal, the appellant primarily presents a troublesome challenge to the authority of a magistrate judge to impose a substantial monetary sanction as a condition of allowing a pre-trial amendment to its answer. After the magistrate judge issued a final pre-trial order setting the end of discovery and scheduling trial, and almost two years after the appellant filed its original answer, counsel for the appellant moved for leave to amend the answer to assert a controlling affirmative defense. During discovery, previous counsel for the appellant had delayed the litigation several times because of his severe illness. Frustrated with the delays, the magistrate judge ultimately permitted the appellant to amend its answer and file a motion for summary judgment, but not before imposing the condition that the appellant pay the opposing party's reasonable attorneys' fees and costs for the additional discovery necessitated by the amendment. Later, the district court granted summary judgment based on the affirmative defense.

The appellant did not object to the condition at the time it was imposed, paid the amount of the sanction without objection, and did not appeal to the district court within 10 days as required by Federal Rule of Civil Procedure 72(a) and a local district court rule. We conclude that, unless exceptional circumstances exist, a party may not obtain relief in this court without making an objection and seeking

review of the magistrate judge's order in the district court. Because we find no exceptional circumstances, we affirm.*

I.

The dispute in this case had its genesis in two severe windstorms that inflicted heavy damage on the foundation walls of a nascent shopping center. Almonesson Associates, L.P. ("Almonesson"), is the owner and developer of the shopping center, called The Court at Deptford in Deptford, New Jersey. Almonesson retained the Douglas Company ("Douglas") to serve as general contractor for the construction. Almonesson and Douglas memorialized their relationship by the "Standard Form of Agreement Between Owner and Contractor" printed by the American Institute of Architects ("AIA"). The front page of the agreement "adopted ... by reference" AIA Document A201, the "General Conditions of the Contract for Construction."

In September 1989, Douglas hired Dominic D'Andrea, Inc. ("D'Andrea"), as a subcontractor to perform the masonry work on the shopping center. The plaintiff, Continental Casualty Company ("Continental"), insured Almonesson against loss of and damage to Almonesson's property. D'Andrea, the defendant herein, performed the masonry work at the construction site between September and November of 1989. D'Andrea was not a party to the underlying construction contract. On November 16 and 21, 1989, severe winds blew down these exterior walls. Pursuant to its obligation under the insurance policy, Continental paid Almonesson $1.3 million for the damage to the walls.

On April 28, 1993, Continental filed this diversity action as subrogee of its insured, Almonesson, against D'Andrea in the United States District Court for the District of New Jersey. In its complaint, Continental alleged that D'Andrea's faulty construction of the exterior walls resulted in damages of $1.3 million.1 D'Andrea then filed a third-
_____

*Although Judge Lewis heard argument in this case, he has been unable, however, to clear this written opinion because of illness.

1. Specifically, Continental alleged that D'Andrea's failure to adhere to the requirements of the architect and general contractor, basic industry and engineering practices, and Deptford's building code resulted in the destruction of the walls.

3

party complaint against Douglas, Almonesson, and the Tarquini Organization, the architect for the project.[2] The case was assigned to a United States magistrate judge for pretrial and discovery matters. The parties conducted discovery and during this period an apparently severe illness and an adverse reaction to medication resulted in D'Andrea's counsel's failure to meet discovery deadlines. As an accommodation to counsel, the magistrate judge extended previously established discovery and other deadlines on numerous occasions. Ultimately, the magistrate judge entered five separate scheduling orders and a final pre-trial order. He scheduled trial for June 12, 1995. In his final pre-trial order, dated February 10, 1995, the magistrate judge warned that "there will be no further extensions of time and no reopening of discovery." (Emphasis in original).

Also in this order, the magistrate judge permitted D'Andrea to depose Gene Carey, Nicholas S. Colanzi, and Joseph Sobel, expert witnesses retained by Continental. Apparently as a sanction for violating discovery deadlines, the judge ordered D'Andrea to pay the three experts' reasonable expert witness fees and the reasonable attorneys' fees of counsel for Continental incurred during the depositions of Colanzi and Sobel. The order made no provision for D'Andrea to file a motion for summary judgment, but permitted Douglas to file one no later than February 17, 1995.

In March 1995, another attorney, Craig Hudson, entered an appearance on behalf of D'Andrea as co-counsel. On March 10, 1995, Hudson moved for leave to amend D'Andrea's answer to assert a critical and controlling affirmative defense based on a provision in the addendum to the AIA construction contract entered into by Almonesson and Douglas. This provision provided that: "[t]he Owner and Contractor waive all rights against (1) each other and any of the their subcontractors ... for damages caused by fire or other perils to the extent covered by property insurance." AIA Document A201, Article 11.3.7

---

2. D'Andrea voluntarily dismissed Tarquini from the lawsuit on March 31, 1994.

(1987 ed.). The effect of this addendum was to deny Continental any subrogation rights against D'Andrea. Hudson gave two explanations for raising this defense at this late stage -- almost two years after D'Andreafiled its original answer. He attributed the failure to raise the defense to the illness of previous counsel and to the failure of plaintiff 's counsel to produce the addendum in discovery or otherwise point out the waiver of subrogation. In his motion, Hudson stated: "If Continental does believe that additional discovery is needed, the court can certainly [make] such arrangements." Hudson also requested permission to file a motion for summary judgment based on the addendum.

At oral argument before the magistrate judge on Hudson's motion and request, counsel for Continental indicated that if the amendment were permitted, he would need to take additional discovery to counter D'Andrea's affirmative defense. The magistrate judge evinced great displeasure with both the tardiness of Hudson's motion and the resulting additional discovery. The judge commented that he had given previous counsel every accommodation by changing deadlines in order to compensate for time lost as a result of counsel's illness and that counsel for both parties had equal access to the addendum because it was explicitly referred to in the Almonesson-Douglas contract. Hudson agreed that at least part of the blame rested either with previous counsel or his client: "[W]e should have found it, and we didn't find it. It was a foul up on this end." The magistrate judge refused to allow D'Andrea to amend its answer or move for summary judgment until it agreed to pay opposing counsel's fees and costs incurred in opposing D'Andrea's motions and in conducting the additional discovery. The judge issued a written order setting forth the condition for the amendment on February 5, 1996.

There is no dispute that D'Andrea did not object to the condition imposed by the magistrate judge to the amendment of its answer. Indeed, at the hearing, the following exchange took place between the magistrate judge and Hudson:

> COURT: From this point forward, all of Mr. Bailey's [counsel for Continental] fees, reasonable

5

legal fees, as a condition of permitting this amendment, will be paid for by ... Commercial Union [D'Andrea's insurer]. This is an explicit condition, and is the only condition under which I will permit the amendment of these affirmative defenses and summary judgment motion. ... You will pay as an explicit condition of permitting this, time for his legal fees in regard to opposing your motion. You're not going to pay for his cost at trial; only those fees related to the amendments. Is that clear?

HUDSON: So I can make sure I tell Commercial Union. Including opposing my motion for summary judgment?

COURT: Absolutely.

HUDSON: Okay.

Later in the hearing, the magistrate judge reiterated this condition and asked: "Is this absolutely clear? Do you have any questions?" Hudson responded, "No." One last time, the court asked Hudson: "No question about what your obligation is with regard to Mr. Bailey?" Hudson responded: "No, I think you've made it pretty clear, Your Honor." After the court issued its written order setting forth the condition, D'Andrea did not file an appeal with the district court. During the next several months, the parties engaged in the additional discovery Continental claimed was necessitated by the amendment to D'Andrea's answer.

Following this discovery, by letter dated May 24, 1996, Continental's counsel provided Hudson with an itemized list of its fees and expenses which totaled approximately $38,000. Hudson responded, also by letter, that the attorneys' fees were unreasonable, excessive, and had included fees not encompassed by the magistrate judge's February 10, 1995 and February 5, 1996 orders. At this time, Hudson did not object to the imposition of fees and costs or claim that the magistrate judge's orders were erroneous. In two letters, one dated June 27, 1996 to counsel for Continental, and one dated August 8, 1996 to

6

the magistrate judge, Hudson never objected to the imposition of the attorneys' fees and costs. Instead, his letter focused almost entirely on his objection to the amount of the fees requested by Continental. On August 27, 1996, by letter to counsel, the magistrate judge ruled that D'Andrea must pay all of the fees and expenses sought by Continental. D'Andrea did not appeal the magistrate judge's letter ruling to the district court. On September 17, 1996, Commercial Union Insurance Company, D'Andrea's insurer, paid the full amount of the fees requested by Continental.

D'Andrea duly filed its motion for summary judgment predicated on the addendum, which the district court granted. In its order, apparently unaware that D'Andrea had already done so, the district court directed D'Andrea to "comply with the February 5, 1996 order of ... [the magistrate judge] regarding the fees and expenses incurred by plaintiff in opposing the present summary judgment motion." On January 2, 1997, D'Andrea filed a notice of appeal.3

II.

On appeal, D'Andrea contends that the magistrate judge's sanctions far exceeded the scope of Federal Rule of Civil Procedure 16 pertaining to scheduling and management of pretrial conferences. D'Andrea asserts that "[n]o rule, `inherent power,' statute or law supports the disproportionate and vastly excessive fees and cost sanctions under the circumstances in this case. The egregiously unjust sanction far outweighed any discretion that a magistrate or district court might have to sanction a party for perceived misconduct during pre-trial proceedings." Furthermore, D'Andrea argues that sanctions were wrongly directed to the client rather than its counsel, that the imposition of the sanctions ignored the plaintiff's conduct in the first instance in filing a "spurious lawsuit" when it had no claim against the defendant. Had the

_____

3. The district court had subject–matter jurisdiction pursuant to 28 U.S.C. S 1332(a)(1). This Court has appellate jurisdiction pursuant to 28 U.S.C. S 1291.

7

plaintiff produced the entire written contact, or had it indicated in discovery that portions of the contract were incomplete and referred to the addendum, defendant asserts this case would have summarily ended. Instead, the defendant argues, that "unjust punishment has been imposed upon D'Andrea for delay caused by Continental's unintentional obfuscation (or deliberate concealment) of the waiver of subrogation."

Before we address D'Andrea's strenuous arguments, a serious threshold question that we must confront is whether or not they may be raised on appeal. Continental argues that D'Andrea may not obtain review in this court because it failed to object to the magistrate judge's orders and, with respect to the second order, it agreed to the imposition of the fees and costs in exchange for permission to amend its answer and assert the affirmative defense of the waiver of subrogation. Continental further contends that review in this Court is not permitted because D'Andrea failed to appeal the orders to the district court as required by Federal Rule of Civil Procedure 72(a)4 and District of New Jersey Local Rule of Civil Procedure 40D(4)(a).5

D'Andrea replies that review is proper in this court because, although it did not object to the magistrate judge's orders, an objection was unnecessary because all the parties knew that D'Andrea was "unhappy" with the orders. D'Andrea also urges that its failure to appeal the second order is not fatal because the district court "reviewed" it sua sponte in its order granting summary judgment, thereby satisfying Rule 72(a)'s requirement of district court

_____

4. Rule 72(a) provides, in pertinent part, that:

> Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a
> party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.

5. District of New Jersey Local Rule of Civil Procedure 40D(4)(a) provides, in pertinent part, that:

> Any party may appeal from a Magistrate's determination of a non-dispositive matter within 10 days after a party has been served with
> a copy of the Magistrate's order, unless a motion for reargument of the matter has been timely filed and served.

review. D'Andrea offers no excuse for failing to object to or appeal the first order.

The district court referred this case to the magistrate judge pursuant to the Federal Magistrates Act (the "Act"), which permits United States District Judges to assign specified matters to magistrate judges. See 28 U.S.C. SS 631-39. There are two types of assignments under the Act. First, pursuant to 28 U.S.C. S 636(b)(1)(A),6 with specifically noted exceptions, a magistrate judge may hear and decide pretrial matters which do not ultimately dispose of the litigation. Id. The magistrate judge's order is dispositive as to the discrete matter referred to him or her unless the district court takes action to overrule it. United Steelworkers of America v. New Jersey Zinc Co., Inc., 828 F.2d 1001, 1005 (3d Cir. 1987) (citing legislative history). In this type of referral, pursuant to Rule 72(a) and Local Rule 40D(4)(a), a party aggrieved by the magistrate judge's order may seek review of it by appealing to the district court within 10 days after being served with a copy of the order. Upon appeal, the district court "may reconsider any pretrial matter ... where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. S 636(b)(1)(A).

Second, pursuant to S 636(b)(1)(B),7  the district court may

_____

6. That section provides:

>    (b)(1) Notwithstanding any provision of law to the contrary--(A) a
>    judge may designate a magistrate to hear and determine any pretrial
>    matter pending before the court, except a motion for injunctive
>    relief, for judgment on the pleadings, for summary judgment, ... to
>    dismiss or to permit maintenance of a class action, to dismiss for
>    failure to state a claim upon which relief can be granted, and to
>    involuntarily dismiss an action. A judge of the court may reconsider
>    any pretrial matter under this subparagraph (A) where it has been
>    shown that the magistrate's order is clearly erroneous or contrary to
>    law.

28 U.S.C. S 636(b)(1)(A).

7. That section provides:

>    (b)(1) Notwithstanding any provision of law to the contrary--(B) a
>    judge may also designate a magistrate to conduct hearings,

9

designate a magistrate judge to hold a hearing, receive evidence and hear argument, make proposed findings of fact, and recommend a disposition. Once the magistrate judge's report and recommendation is filed, parties have 10 days to object to it. 28 U.S.C. S 636(b)(1)(C). The district court must then review de novo the parts of the magistrate judge's report and recommendation to which a party objects. Id. The magistrate judge's report and recommendation does not have the force of law, it being merely a recommendation, unless and until the district court enters an order accepting or rejecting it. See New Jersey Zinc, 828 F.2d at 1005.

There is an important distinction between the two types of referrals under the Act. In a subsection (A) referral, the magistrate judge's order has the force of law unless appealed. It is final in the sense that it may be appealed. In contrast, in a subsection (B) referral, the magistrate judge's recommendation only becomes effective when the district court accepts it. Hence, in a subsection (B) referral no appealable decision exists until the district court accepts the magistrate judge's recommendation. For this reason, we have held that a failure to object to a magistrate judge's report and recommendation does not foreclose appellate review in this Court. See Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).[8]

It is well settled that the intention of the Federal Magistrates Act is to "relieve courts of unnecessary work and to improve access to the courts." Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986) (quoted with approval in New Jersey Zinc, 828 F.2d at 1007). "The Act is designed to relieve the district courts of certain

_____

including evidentiary, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A).

28 U.S.C. S 636(b)(1)(B).

8. In Thomas v. Arn, 474 U.S. 140 (1985), the United States Supreme Court held that, pursuant to their supervisory power, the circuit courts may elect to permit or prohibit appellate review of unobjected to reports and recommendations.

10

subordinate duties that often distract the courts from more important matters." Peretz v. United States, 501 U.S. 923, 935 (1990) (citing legislative history); see also Government of the Virgin Islands v. Williams, 892 F.2d 305, 311 (3d Cir. 1989). The Act furthers this goal by permitting district judges to delegate certain matters to magistrate judges. Peretz, 501 U.S. at 935 n.9 (quoting legislative history). The time and resources of the district judges are conserved because, once the matter is assigned to a magistrate judge and he or she makes his or her decision or recommendation, the district judge need take no time reviewing the matter unless a party objects to the order. Hence, unobjected to orders and recommendations or parts thereof do not take up the district judge's time. If the district courts were required to review all of the magistrate judge's decisions and recommendations, even those to which there was no objection, the policy of the Act would be severely undermined.

In the instant case, the court assigned this case pursuant to S 636(b)(1)(A). Hence, the magistrate judge was authorized to decide nondispositive pretrial mattersfinally. There is no dispute that the motion to amend filed by D'Andrea did not dispose of the lawsuit or a claim. See Pagano v. Frank, 983 F.2d 343, 346 (1st Cir. 1993) (motion to amend is nondispositive); see also Pyca Indus. v. Harrison County Waste Water Mgmt. Dist., 81 F.3d 1412, 1421 (5th Cir. 1996) (motion to amend is nondispositive in context of Fed. R. Civ. P. 54(b) certification). Review of this type of order is by appeal to the district court. Pursuant to Rule 72(a) and Local Rule 40D(4)(a), a party opposed to a magistrate judge's order must file objections within 10 days of service of the order.

It is undisputed that D'Andrea did not object to or appeal to the district court either of the magistrate judge's orders. We first turn to the February 10, 1995 order of the magistrate judge ordering D'Andrea to pay certain counsel and expert witness fees. D'Andrea offers no excuse for its failures to object to or appeal this order. As a general rule, we do not consider on appeal issues that were not raised before the district court in the absence of exceptional circumstances. Fleck v. KDI Sylvan Pools, Inc., 981 F.2d

11

107, 116 (3d Cir. 1992); Tabron v. Grace, 6 F.3d 147, 153–54 n.2 (3d Cir. 1993) (citing Selected Risks Ins. Co. v. Bruno, 718 F.2d 67, 69 (3d Cir. 1983)). D'Andrea points to no exceptional circumstances with respect to this order.9 Hence, we decline to review it.

With regard to the February 5, 1996 order, D'Andrea claims an objection or appeal was not necessary. D'Andrea asserts that the spirit of the objection and appeal requirements were met because the magistrate judge and Continental knew that D'Andrea was "unhappy" with the February 5, 1996 order. D'Andrea argues that the judge's and plaintiff 's knowledge of its unhappiness has the same effect as an explicit and contemporaneous objection.

We disagree for two reasons. First, D'Andrea points to nothing in the record which establishes that it was actually "unhappy" with the magistrate judge's order. To the contrary, we conclude that D'Andrea did not object because it elected to accept, albeit reluctantly, the condition the magistrate judge placed on permitting the amendment. When questioned by the magistrate judge, Hudson never stated that he opposed the order or that he intended to appeal it. Instead, he repeatedly told the magistrate judge that he understood the order and that he intended to inform his client of it.10 In the exchange of letters between counsel and the magistrate judge, D'Andrea then forewent several additional opportunities to object by paying the fees, without objection. We note that Hudson was keenly aware

_____

9. We recognize that the plain language of Rule 72(a) seems to prohibit a party from "assign[ing] as error a defect in the magistrate judge's order to which objection was not timely made." Fed. R. Civ. P. 72(a). This language, however, is not a bar to review by this Court when exceptional circumstances exist. See Tabron, 6 F.3d at 153–54 n.2. We have construed virtually identical language in Federal Rule of Civil Procedure 51 similarly. Although that rule prohibits review in this Court when a party does not object to the district court's failure to give a jury instruction, we have permitted plain-error review. See Fausher v. New Jersey Transit Rail Opers., 57 F.3d 1269, 1289 (3d Cir. 1995).

10. We also note that Hudson seemed to be prepared to accept at least some conditions on the amendment of his answer when he stated in his motion to amend: "If Continental does believe that additional discovery is needed, the court can certainly [make] such arrangements."

12

that the magistrate judge was frustrated by previous counsel for D'Andrea's repeatedly delaying the litigation by missing deadlines. It seems apparent that the real reason for Hudson's failure to object to the order was to avoid further upsetting the magistrate judge by again delaying the litigation with an objection and an appeal to the district court. Presumably, Hudson reasoned that, even with the imposition of the attorneys' fees and costs, it was strategic for his client to pay them under the circumstances; if he was not permitted to amend his answer, his client faced a potential judgment for as much as approximately $1.3 million.

Second, even if we conclude that D'Andrea was "unhappy" with the magistrate judge's February 5, 1996 order and that this was evident from the record, the rules of civil procedure do not permit a party's emotional state of mind to substitute for an objection or appeal. Hudson had several opportunities to state his opposition to the order and elected not to do so.[11] Allowing a party's evident "unhappiness" about an order to constitute an objection is antithetical to orderly litigation. Parties are often unhappy with orders but elect not to object to them for tactical or other reasons. Permitting a state of mind to substitute for an objection on the record would allow a party to sandbag the district court and the other parties by allowing or inviting the court to make an error and then springing the issue on the other party on appeal. See 9A Charles A.

_____

11. D'Andrea suggests that the magistrate judge's intimidating behavior made the "atmosphere" at the hearing unconducive to an explicit objection. D'Andrea points to the judge's refusal to accommodate Hudson's calendar in setting discovery deadlines and referring to the presence of a United States Marshal to stifle further argument. We have reviewed the record and note that, while somewhat angry and harsh, the magistrate judge's comments were the result of frustration from D'Andrea's previous counsel's repeatedly missing deadlines. Even accepting D'Andrea's characterization of the judge's comments, they did not excuse an explicit objection. The rules do not require a prolonged protest or that the attorney directly confront an angry judge. They require only a respectful and explicit objection. See Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure S 2472, at 94 (1995). Regardless, the magistrate judge's captious behavior does not excuse failing to file an appeal with the district court.

13

Wright & Arthur R. Miller, Federal Practice and Procedure S 2472, at 93-95 (1995).

Explicit opposition or an objection on the record to a proposed order permits the court to consider the position of the opposing party and modify, or even possibly abandon, the order in light of the arguments raised. See Fleck 981 F.2d at 116; Wright & Miller, supra, S 2472, at 94-95; cf. Elder v. Holloway, 984 F.2d 991, 998 (9th Cir. 1993) (party finding fault with jury charge must make timely objection to give trial judge chance to correct error before deliberation); see also Thomas v. Arn, 474 U.S. 140, 147 (1985) (requirement of timely objection to magistrate's report furthers judicial economy and focuses court on heart of parties' dispute). When a party fails to object, a court is deprived of the opportunity to correct the alleged defect. In this case, the magistrate judge and the district court were denied the opportunity to correct possible errors in the order because D'Andrea never objected to any of record.

D'Andrea next contends that its compliance with Rule 72(a) was excused because the district court sua sponte "reviewed" the magistrate judge's second order when it entered summary judgment on December 2, 1996. There is no indication that the district court actually reviewed the magistrate judge's order; the district court merely ministerially ordered D'Andrea to comply with the magistrate's order and pay the amount imposed. Unbeknownst to the district court, D'Andrea had already paid the amount without objection approximately three months earlier, in September 1996. Indeed, there would be no reason for the district court to review the order given that no objection by either party had been made to it.

The overwhelming weight of authority supports our decision. This Court has specifically held that a party failing to appeal to the district court a magistrate judge's order in a nondispositive matter may not raise an objection to it on appeal to a circuit court. See New Jersey Zinc, 828 F.2d at 1008; accord Tabron, 6 F.3d at 153-54 n.2; Turner v. Schering-Plough Corp., 901 F.2d 335, 341 n.4 (3d Cir. 1990). In addition, other circuits considering the issue also have decided that a failure to appeal a magistrate judge's subsection (A) order waives the right to challenge it on

14

appeal. See, e.g., Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1174 (9th Cir. 1996); Illinois Conf. of Teamsters v. Gilbert Trucking, 71 F.3d 1361, 1367–68 n.5 (7th Cir. 1995); ICA Constr. Corp. v. Reich, 60 F.3d 1495, 1499 (10th Cir. 1995); CNP–q–Conselho Nacional v. Inter-Trade, Inc., 50 F.3d 56–57 (D.C. Cir. 1995); Pagano v. Frank, 983 F.2d 343, 345–47 (1st Cir. 1993); Boren v. N.L. Indus., 889 F.2d 1463, 1465 (5th Cir. 1989); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).

It may well be that plaintiff's counsel took advantage of the magistrate judge's frustration to charge D'Andrea with excessive attorneys' fees and costs. D'Andrea may also be correct that the sanction was somewhat unjust. Continental may also have filed a spurious lawsuit in light of the addendum to the underlying contract waiving subrogation rights and, presumably having calculated the policy premium on that basis, must have known at all times it had no claim against the defendant. Nonetheless, even if an objection before the magistrate would have been futile, D'Andrea still had its remedy in the district court in each instance. It deliberately, however, chose not to avail itself of that remedy.

Permitting review when no exceptional circumstances exist would severely undermine the Act's aim to save the district courts' time and resources by improperly encouraging them to review even unobjected to orders. Thus, to uphold the policies of the Act, we must define exceptional circumstances narrowly. Only when the public interest requires review of the unraised issue, when manifest injustice would result from the failure to consider the new issue, or when the alleged error was fundamental and resulted in a highly prejudicial error do exceptional circumstances exist.

In Fleck v. KDI Sylvan Pools, the trial court entered a directed verdict to which counsel of the losing party did not object. On appeal, we reviewed the issue holding that it was waived and that there were no exceptional circumstances. The appellant contended that the failure of its counsel to object "was a fundamental and highly prejudicial error resulting in a miscarriage of justice." We rejected counsel's characterization of the error and refused to consider the

15

merits, stating: "Many errors by one's counsel prejudice a case; but few are said to be a miscarriage of justice. Mere prejudice is insufficient to retrieve an abandoned issue." Id. at 116. In the instant case, D'Andrea offers no explanation for its failure to raise an objection to the magistrate judge's orders or in appealing to the district court. Its counsel's conduct was not mere inadvertence or ineptness; counsel strategically made a calculated exercise of judgment that may have been ill-considered. See id. ("When a litigant takes an unequivocal position at trial, he cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake"). Thus, we do not find any exceptional circumstances. We are not aware of any obstacles to an appeal to the experienced and learned district judge and we see no public interest to be advanced by considering the amount of the attorneys' fees and costs here involved. See Altman v. Altman, 653 F.2d 755, 757–58 (3d Cir. 1981); cf. Princeton Community Phone Booth, Inc. v. Bate, 582 F.2d 706, 708 n.1 (3d Cir. 1978).

That counsel for D'Andrea appears to have elected to accept the magistrate judge's condition so that he could amend his answer is, by itself, sufficient to establish that no exceptional circumstances exist. Cf. United States v. Olano, 507 U.S. 725, 732 (1993) (intentional relinquishment of known right extinguishes error related to that right). Even if that were not the case, no manifest injustice resulted from the magistrate judge's order. Although not free from cost to D'Andrea, the order permitted D'Andrea to raise a defense almost two years after it filed its original answer that it could have discovered much earlier in the litigation, led to the case being decided on the merits, and allowed D'Andrea to avoid a judgment against it for approximately $1.3 million. We do notfind any exceptional circumstances that would lead us to exercise our discretion to review the second order.

Finally, we note that, while magistrate judges have ample discretion in controlling their dockets, see In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) (district courts have wide discretion in controlling docket), and imposing sanctions to protect parties from abuse and unfair prejudice, cf. General Ins. Co. of America v. Eastern

16

Consol. Utils., Inc., 126 F.3d 215, 219 (3d Cir. 1997) (court of appeals reviews imposition of discovery sanctions for abuse of discretion), such discretion is not unlimited. Although we are mindful of the magistrate judge's frustration with the delays and his repeated accommodations of counsel for D'Andrea and his expression of such frustration, see Offut v. United States, 348 U.S. 11, 17 (1954) ("a modicum of quick temper ... must be allowed even judges"), we question his imposition of such an onerous condition on an amendment to a pleading. See Fed. R. Civ. P. 15 (leave to amend pleadings shall be freely given "when justice so requires"). Requiring a party to pay $38,000 in attorneys' fees and costs to amend a pre-trial pleading is rarely justified when there is no evidence, or even a contention, that the sanctioned party acted in bad faith. However, because D'Andrea voluntarily decided to accept this condition without objection, we are constrained to deny review.

III.

In sum, we reaffirm our holding in New Jersey Zinc that a party that does not appeal a magistrate judge's nondispositive order to the district court waives its right to review the order in appellate court. Only when exceptional circumstances are present will we review such an order. Because we do not find exceptional circumstances in this case, the district court's February 10, 1995 and February 5, 1996 orders will be affirmed. Each side to bear its own costs.

17

SLOVITER, Circuit Judge, concurring in the judgment to affirm.

I concur in the judgment to affirm, but I write separately because my reasons differ to a significant extent from those given by my colleague, Judge Rosenn. Judge Rosenn's opinion sets forth, with his usual thoroughness and clarity, the procedural history, and I therefore will only augment his recitation with facts that I believe need emphasis.

The complaint was filed by Continental Casualty Company against Dominick D'Andrea, Inc., a subcontractor, for subrogation for damages Continental had to pay to Almonesson Associates, L.P., the owner and developer of a shopping mall, when concrete walls that D'Andrea had constructed collapsed during a storm. Continental, who filed the complaint, had the obligation to prove that it was entitled to recover as subrogee. During discovery, Continental was requested by D'Andrea's prior attorney to produce the contract on which it based its suit, and in response it produced the contract between the Owner, Almonesson, and the general contractor, The Douglas Company. Although the first page of the contract incorporates by reference another document, "The 1987 Edition of the AIA Document A201, General Conditions of the Contract for Construction," a standard form document that is apparently used often in construction contracts, that document, "the A201 document," was not produced by Continental in discovery. Nor did D'Andrea's counsel specifically request it. It was only after D'Andrea's new counsel realized he did not have the complete contract, a matter he learned from the motion for summary judgment filed by Douglas, a third-party defendant, did he obtain the A201 document. From that document, he discovered a provision in which Continental had waived its rights to subrogation of Almonesson's claim against D'Andrea. In other words, Continental had filed a lawsuit claiming subrogation when it had no legal right to do so, a conclusion confirmed by the district court when it granted summary judgment to D'Andrea and against Continental on that basis.

Unfortunately for D'Andrea, the discovery of that addendum to the contract was not made until March 1995,

18

by which time the magistrate judge to whom the pretrial proceedings had been assigned had reached the limit of his patience, apparently because of delays caused by the illness of D'Andrea's former counsel. I note that no party disagrees that D'Andrea's former counsel was seriously ill, periodically hospitalized, and affected mentally by the illness.

The motion of D'Andrea's new counsel to amend the answer to assert this dispositive defense of the waiver-of-subrogation clause was filed March 10, 1995, which was after the magistrate judge had filed the pretrial order (February 1995) expressly stating that there would be no further extensions. Nonetheless, D'Andrea moved to amend the Pretrial Order to add the affirmative defense and to move for summary judgment on that basis. Continental objected but sought additional discovery and an opportunity to oppose the summary judgment motion should the court grant D'Andrea's requests. The magistrate judge told the parties to address the motion to the district court, and that court then referred it back to him.

The magistrate judge, apparently frustrated at this turn of events, granted the motion to amend the Pretrial Order based on the waiver-of-subrogation provision of the contract only on condition that all fees and expenses of Continental "that relate to the amendment" shall be borne by D'Andrea. Order dated Feb. 5, 1996. App. at 328. More explicitly, the magistrate judge stated:

> all fees and expenses of [Continental] that relate to the amendment shall be borne by [D'Andrea], including but not limited to costs and fees for (i) briefing and argument of the present motion, (ii) any further discovery [Continental] requires, (iii) a scheduling conference, (iv) all opposition to [Continental's] motion for summary judgment; and [Continental] shall timely submit certifications which reflect its expenses related to the amendment.
>
> . . . [I]f [D'Andrea] does not pay[Continental's] fees . . . the affirmative defense which is the subject of this order shall be stricken and the . . . motion for summary judgment shall be dismissed.

19

App. at 328-29 (emphasis in original).

It is true, as Judge Rosenn points out, that D'Andrea's counsel did not object at that time to the order conditioning the right to amend on payment of fees and expenses, nor did it appeal. But we cannot ignore evidence in the record that may help explain why D'Andrea's counsel may have thought that silence, rather than an appeal at that time, was his required course. The transcript of the hearing on the motion to amend before the magistrate judge on February 2, 1996 discloses that the hearing was scheduled only because the district court requested him to take a look at it. The magistrate judge also asked D'Andrea's original counsel to be present because some of the issues pertained to his conduct.

The attitude of the magistrate judge toward the motion was evident at the start, when he stated, "This is a textbook example of abuse of the legal system." App. at 298. His hostility toward the arguments presented on behalf of D'Andrea is evident throughout, illustrated by his denomination of D'Andrea's counsel's argument, inter alia, as "hutzpa." App. at 304. I will not go through the colloquy verbatim, but Judge Rosenn also acknowledges the magistrate judge's "harsh comments" and "captious behavior." Ultimately the magistrate judge announced that he would permit the amendment because he believed that otherwise under the law of the Third Circuit, they would be "right back here in three years." App. at 321. He advised counsel that D'Andrea's insurance company would have to pay the legal fees related to the additional work needed to allow Continental to respond to the additional affirmative defenses.

Toward the end of that colloquy, counsel for Continental asked the court, which had contemplated that the additional discovery should be completed in 20 days, to change that time to 60 days, which the court immediately agreed to do. The following then took place:

> MR. HUDSON [counsel for D'Andrea]: I almost hate
> to do this, but you're raising a calendar. I know the
> second week in February I'm going to be at expert
> depositions that --

20

THE COURT: You are going to have to get someone else from your firm here. Now look it --

MR. HUDSON: All right, I know. I thought I would tell you --

THE COURT: Don't push the envelope here, my friend. I have this big huge marshall sitting back there.

MR. HUDSON: I just wanted to raise it.

THE COURT: Don't, don't, don't, don't.

App. at 325 (emphasis added).

I do not know for a fact what the magistrate intended by the reference to the "big huge marshall," but it is reasonable to believe that an attorney might take that as some kind of threat, whether intended benignly or not. When coupled with the fact that the fate of the amendment, with what counsel believed was a dispositive affirmative defense, and the fact, as Judge Rosenn acknowledges, that the client faced a potential judgment for $1.3 million, it is no wonder that counsel determined to proceed with the discovery under an order that he may have believed was unfair but which had not been reduced to any dollar amount. Nor do I believe it is reasonable to fault counsel for failing to appeal that non-dispositive order to the district court at that time. Counsel, having been subject to the magistrate judge's temper, may have reasonably determined not to risk his ire by an appeal.

Thus, I respectfully disagree with Judge Rosenn that D'Andrea has no excuse for its failure to object to or appeal the order of February 5, 1996. Nor do I agree that Rule 72(a) provides an unbreachable barrier under circumstances such as that here.

In United Steelworkers of America v. New Jersey Zinc Co., 828 F.2d 1001 (3d Cir. 1987), we stated that although a party ordinarily waives its ability to challenge on appeal a magistrate's pretrial order by failing to file a timely objection, the failure to file a formal objection with the district court is not fatal to our review under "extraordinary circumstances." Id. at 1008 (citations omitted). Although Judge Rosenn acknowledges the "extraordinary

21

circumstances" exception, he believes that none have been shown here. I, on the contrary, believe that what appears to be an unexplained judicial threat, together with the possibility that a client will not be permitted to interpose a dispositive defense to a $1.3 million claim, is enough to constitute "extraordinary circumstances."

We have construed language in Fed. R. Civ. P. 51 similar to that in Rule 72 to permit appellate review for plain error. See Fashauer v. New Jersey Transit, 57 F.3d 1269, 1289 (3d Cir. 1995). We have defined plain errors as those errors that " `seriously affect the fairness, integrity or public reputation of judicial proceedings.' " Osei-Afriyie v. Medical College of Pennsylvania, 937 F.2d 876, 881 (3d Cir. 1991) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)). In Walden v. Georgia-Pacific Corp., 126 F.3d 506 (3d Cir. 1997), we explained that a plain error challenge will succeed if there is an actual error, i.e., a deviation from or violation of a legal rule, the error is plain, i.e., clear and obvious under current law, and the error affects substantial rights. In other words, the error must be prejudicial and must have affected the outcome of the district court proceedings. Id. at 520 (citing United States v. Olano, 507 U.S. 725, 732-34 (1993)); see also Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure S 5043 (1996). Although we exercise our power to reverse for plain error sparingly, Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Surety Co., 89 F.3d 976, 994 (3d Cir.), cert. denied, 117 S.Ct. 485 (1996), the circumstances of this case are sufficiently serious for us to question the integrity of the proceedings.

Finally, D'Andrea's counsel might well have decided that there was little possibility that the order would be overturned at that juncture. It is not unusual for trial courts to impose costs on a party for its delay as a condition to permit an extension. There was no basis to assume that the amount of costs imposed would be anything but reasonable. Thus, I would not preclude review on the basis of D'Andrea's failure to appeal from the February 5, 1996 order.

D'Andrea, however, was not without other opportunities to seek redress at the trial court level. Assuming, as I am

22

willing to do, that counsel's obligation to the client justified taking no action that might jeopardize the ultimate disposition of the case, D'Andrea offers no plausible explanation why it took no action once the district court granted summary judgment. At that time, of course, D'Andrea had already paid the full amount of the fees and costs requested by Continental's counsel because that was a condition precedent to the ruling. In the same order of December 12, 1996 containing the district court's order granting summary judgment to D'Andrea based on the waiver of subrogation clause, the court also ordered "that defendant comply with the February 5, 1996 order of [the magistrate judge] regarding the fees and expenses incurred by plaintiff in opposing the present summary judgment motion."

As Judge Rosenn suggests in his opinion, the purpose and effect of that provision of the order is unclear. D'Andrea had already complied with the order to pay the fees and expenses. Thus, if Judge Rosenn is correct that the district court did not actually review the magistrate judge's order, then the district court never focused on the substance of D'Andrea's objection to the amount of fees and costs which it had been required to pay.

Those objections are not without some facial plausibility. While I personally am not persuaded by D'Andrea's argument that the delay in interposing the dispositive affirmative defense was not serious or prejudicial to Continental, I believe there may be more basis to its contention that the magistrate judge failed to assess the relative responsibility for the delayed production of the contract form.

The magistrate judge does not appear to have considered the role of Continental in filing a subrogation claim where the contract of the subrogor precluded such an action. To the contrary, his approach absolved Continental of any blame in filing and maintaining an action that lacked merit. But Continental was the party that had the obligation under Rule 11 of the Federal Rules of Civil Procedure to investigate in good faith whether the claim could be pursued under the law and the facts. Presumably, someone in its organization was aware of the incorporation of the

23

A201 document in a contract negotiated by its insured, and its failure to produce the entire document when requested to do so in discovery led to the succeeding events.

Moreover, there is no suggestion that the magistrate judge focused on D'Andrea's contention that Continental pursued unreasonable discovery, such as that ultimately precluded by the parol evidence rule, confident that someone else would be paying the bill. Of course, discovery is not limited to admissible evidence but the magistrate judge had emphasized that costs it had authorized had to be in connection with "reasonable" discovery, and there is no indication on the record that Continental's counsel's bill for fees and expenses was scrutinized by a judge for its reasonableness after D'Andrea interposed its objection. In fact, the magistrate judge summarily denied D'Andrea's objections even after Continental agreed to modify its fee request. See App. at 402, 415.

Despite what appear to me to be serious deficiencies in the procedure relating to the assessment of the fees and expenses, I do not vote to reverse and remand because I see no indication in the record that D'Andrea's counsel made an effort post-judgment to bring these matters to the district court's attention. The docket does not show that counsel made a motion under FRCP 59(e) to alter or amend the judgment, which would have afforded the district court the chance to hear from both parties. There is nothing at all to suggest that any statement or action by the district court created whatever in terrorem effect may have been caused by the magistrate judge's attitude. Issues relating to costs and expenses are by their very nature appropriate for consideration in the first instance at the district court level. Having neglected the opportunity to do this earlier, D'Andrea is not entitled to have them considered by this court. In so holding, however, I note that D'Andrea may not be precluded from seeking relief by filing a Rule 60(b)(6) motion in the district court, although I take no position on its use in these circumstances.

Accordingly, I join Judge Rosenn in affirming the judgment of the district court.

24

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit